Lamont R. JONES, Appellant,

v.

UNITED STATES, Appellee.

No. 97–CF–1040.

District of Columbia Court of Appeals.

Argued Jan. 21, 1999.

Decided Sept. 16, 1999.

Kenneth E. Sealls, Washington, DC, appointed by the court, for appellant.

Jonathan N. Rosen, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and John R. Fisher and Michael V. Tomaselli, Assistant United States Attorneys, were on the brief, for appellee.

Before SCHWELB, FARRELL and RUIZ, Associate Judges.

RUIZ, Associate Judge:

After a jury trial, appellant, Lamont R. Jones, was convicted of various weapon-related charges.[1] Jones contends on appeal that the trial court abused its discretion in admitting evidence that he was wearing a bullet-proof vest when apprehended by the police. Appellant also asserts that the trial court erred in not, *sua sponte*, finding that an analogy made by the government in closing argument was improper and warrants reversal. We affirm.

## I.

At approximately 1:50 a.m. on March 19, 1996, Officers Brady and Thomas, driving a marked police car, were patrolling in the 5800 block of Fields Place N.E., an area well-lit by street lights. From a distance of about sixty feet, Officer Brady saw Jones holding a large black weapon in his left hand and immediately recognized the weapon as a "Tec–9 configuration" handgun, a machine gun. As Officer Brady continued to approach Jones in the police car, he observed Jones place the gun in his waistband. After Officer Brady alerted Officer Thomas to the gun, Officer Thomas noticed the gun protruding from Jones' waistband. As the patrol car moved even closer to Jones, both officers saw Jones move his jacket to conceal the gun and cradle his right arm around the jacket. The officers then observed Jones fleeing the approaching patrol car between two apartment buildings.

1. Appellant was convicted of carrying a pistol without a license, D.C.Code § 22–3204(a) (1996), possession of an unregistered firearm, D.C.Code § 6–2311(a) (1995), possession of ammunition, D.C.Code § 6–2361, and possession of a prohibited weapon, D.C.Code § 22–3214(a).

Officer Brady stopped the car and chased Jones through a dark alley and into the 5900 block of Foote Street where he and Officer Thomas, who had driven the patrol car to Foote Street, apprehended Jones. After a pat-down search, Officer Thomas discovered that Jones, who was wearing a bullet-proof vest, did not have a gun on his person. Officer Brady immediately directed Officer Vaughan, a back-up police officer, to search the alley through which he had chased Jones. There, Officer Vaughan found a "semiautomatic TEC–9 looking 9 millimeter pistol" which was not wet on the side facing up even though it was a dewy evening. The machine gun was loaded at the time it was recovered and Officer Brady identified it as the one he had seen Jones holding on the 5800 block of Fields Place. No fingerprints were found on the gun.[2] A test fire of the gun confirmed that it was in working order.

Before trial, defense counsel made a motion *in limine* requesting the exclusion of the bullet-proof vest Jones wore when he was arrested on the grounds that it was irrelevant and that its probative value was substantially outweighed by its prejudicial effect. The trial court denied this motion and, in closing argument, the government made the following analogy:

[D]o you remember ... King Arthur, the Knights of the Round Table? You remember those gallant folk back in medieval times? They were the ones that were riding on horseback with shields and with swords.

How many knights have you ever heard of or seen that rode around on horseback only carrying a shield? There's nothing illegal about this, ladies and gentlemen, nothing illegal about it at all. But at two o'clock in the morning in this area here when this man there sees the police and runs and he is seen by the police to be holding what appears to be [a gun] and [a gun] is recovered, what's

the probability that that knight was only carrying a shield and he wasn't carrying a weapon?

Well, ladies and gentlemen, I submit to you what happened here is that the real knights, the real knights came into Field Place. And when the real knights were seen by the pretend knight, the pretend knight ran. And he got rid of his sword but he couldn't get rid of his shield. But the police found it. And because the police found it, we're here today.

Jones was convicted on all charges.

## II.

### A. *Admission of bullet-proof vest.*

■■■ Jones argues that evidence of his bullet-proof vest was irrelevant to the charge of gun possession and, therefore, should not have been admitted. Relevant evidence is "that which makes the existence or nonexistence of a [contested] fact more or less probable" than it would be without the evidence. *Punch v. United States*, 377 A.2d 1353, 1358 (D.C.1977), *cert. denied*, 435 U.S. 955, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978). The "test for relevance is not a particularly stringent one." *Street v. United States*, 602 A.2d 141, 143 (D.C.1992). For evidence to be relevant, it must be "related logically to the fact that it is offered to prove .... the fact sought to be established by the evidence must be material .... [and] the evidence must be adequately probative of the fact it tends to establish." *Freeman v. United States*, 689 A.2d 575, 580 (D.C.1997) (quoting *Reavis v. United States*, 395 A.2d 75, 78 (D.C. 1978)). A trial court's evidentiary ruling concerning the relevance of evidence "rests within the sound discretion of the trial court," *id.* (citing *Street, supra,* 602 A.2d at 143), and "will be upset ... only upon a showing of grave abuse." *Blakeney v. United States*, 653 A.2d 365, 368 (D.C.1995) (citation omitted).

---

**2.** Officer James Holder, assigned to crime scene investigation, testified that, because of

the machine gun's texture, "[i]t's almost impossible" to obtain latent finger prints.

While the bullet-proof vest alone might have limited probative value, viewed within the factual context of this case, the fact that Jones was wearing a bullet-proof vest supports the inference that he possessed a "Tec–9 configuration" gun, a matter in dispute at trial. In addition to the bullet-proof vest, there was evidence that Jones was seen by two officers with a "Tec–9 configuration" gun in his possession, and then fled at the sight of a marked police cruiser. Jones was apprehended shortly thereafter, but without a gun. A "semiautomatic Tec–9 looking pistol" was subsequently found in Jones' path of flight. Thus, the fact that Jones was wearing a bullet-proof vest, when combined with testimony that the officers saw Jones with a gun, Jones' flight and the location of the gun, was probative on the issue of whether Jones possessed the gun. *See Punch, supra*, 377 A.2d at 1358 (evidence of masks and hats in vehicle where guns were found was "probative on the issue of guilty knowledge" of weapons); *United States v. Moore*, 322 U.S.App.D.C. 334, 338, 104 F.3d 377, 381 (1997) (fact that defendant was wearing a bullet-proof vest and driving a bullet-ridden vehicle "strengthens the inference" that defendant possessed guns found in vehicle that fit his shoulder holster); *see also Blakeney, supra*, 653 A.2d at 368 (pager found in defendant's pocket at time of arrest, though not illegal, is relevant to the issue of intent as pagers are associated with distribution of illegal drugs); *Morton v. United States*, 620 A.2d 1338, 1340 (D.C.1993) (citing beepers found in apartment as relevant evidence of drug distribution). We do not imply that in every case a person is charged with gun possession it will necessarily be relevant that the person was wearing a bullet-proof vest. Based on this record, however, we conclude that the trial court did not abuse its discretion in finding that the fact Jones was wearing a bullet-proof vest at the time was evidence relevant to whether he also possessed a "Tec–9 configuration" machine gun.

Our conclusion on the relevance of the bullet-proof vest is not the end of the inquiry because, even if relevant, evidence "may be excluded if its probative value is *substantially* outweighed by the danger of unfair prejudice." *(William) Johnson v. United States*, 683 A.2d 1087, 1099 (D.C. 1996) (en banc) (citing FEDERAL RULE OF EVIDENCE 403), *cert. denied*, 520 U.S. 1148, 117 S.Ct. 1323, 137 L.Ed.2d 484 (1997) (emphasis added). Jones claims that evidence of the bullet-proof vest should have been excluded because any probative value of the bullet-proof vest is far outweighed by its prejudicial nature.

"[W]e recognize that the evaluation and weighing of evidence for relevance and potential prejudice is quintessentially a discretionary function of the trial court, and we owe a great degree of deference to its decision." *Id.* at 1095 (citations omitted). In this case, the trial court recognized that evidence of the bullet-proof vest was "somewhat prejudicial," but concluded that its probative value weighed in favor of admission.[3]

Jones further claims that any probative value of the bullet-proof vest is far outweighed by its prejudicial nature. "Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice." *Freeman, supra*, 689 A.2d at 580; *(William) Johnson v. United States*, 683 A.2d 1087, 1100 (D.C.1996) (en banc), *cert. denied*, 520 U.S. 1148, 117 S.Ct. 1323, 137 L.Ed.2d 484 (1997). As with relevance, "the weighing of probative value against the danger of unfair prejudice 'is a decision committed to the sound discretion of the trial court.'" *Blakeney, supra*, 653 A.2d at 368 (quoting

---

**3.** Although the trial court did not expressly state the applicable balancing test, its reference to the bullet-proof vest as "somewhat prejudicial" but "quite probative" indicates that it considered that the evidence's probative value was not substantially outweighed by its prejudicial effect.

*Hawkins v. United States,* 482 A.2d 1230, 1232 (D.C.1984) (per curiam)).

■■■■ In this case, the trial court recognized that evidence of the bullet-proof vest was "somewhat prejudicial," but concluded that its probative value weighed in favor of admission. With respect to probative value, as defense counsel had challenged the government's direct evidence, namely the police officers' testimony that they saw Jones with a gun from a distance and late at night, the bullet-proof vest provided significant corroborative evidence of Jones' guilt. Contrary to appellant's suggestion, the fact that he wore a bullet-proof vest at the time of arrest does not show that he was somehow predisposed to possess weapons. Rather, "it simply augments the picture" that Jones possessed a Tec–9 configuration gun at the time he was wearing the vest. *Blakeney, supra,* 653 A.2d at 369. As noted *supra,* the bullet-proof vest strengthened the inference that the weapon found in Jones' path of flight had been in his possession as he ran through the alley. Although Jones complains that the bullet-proof vest increased the likelihood that he was convicted not for the charged crime, but because of his image as an "urban warrior," the court specifically instructed the jury that wearing a bullet-proof vest in the District of Columbia is not illegal.[4] *See Thompson v. United States,* 546 A.2d 414, 426 (D.C.1988) (clear limiting instructions "will reduce, if not dissipate, the danger of unfairness and prejudice."); *Punch, supra,* 377 A.2d at 1358 & n. 8 (concluding that the trial court did not strike an "improper balance between probative value and risk of prejudicial impact" where the court instructed the jury on the limited purpose for which they were to consider the evidence). We cannot say, therefore, that the trial court abused its discretion in finding that the bullet-proof vest's probative value outweighed any danger that it would "sway improperly the jury's deliberations."[5] *Street, supra,* 602 A.2d at 143–44; *cf. Smith v. United States,* 665 A.2d 962, 966 (D.C.1995) (concluding that remark that appellant "always wore a bullet-proof vest" was not so prejudicial as to require a mistrial).

## B. *Improper prosecutorial argument.*

■■■■ Jones' final argument on appeal is that the government's "Knights of the Round Table" analogy in its closing statement was so inflammatory that it constituted prosecutorial misconduct, and that the trial court erred in failing to address it *sua sponte,* notwithstanding lack of objection by defense counsel. In assessing claims of prosecutorial misconduct, we must first decide whether "any or all of the challenged comments by the prosecutor were improper," and, if so, whether the defendant suffered "substantial prejudice" as a result. *McGrier v. United States,* 597 A.2d 36, 41 (D.C.1991) (citations omitted). However, as Jones failed to raise this issue below, we will reverse his conviction on this ground "only if the misconduct so

4. In addition, defense counsel stressed in closing argument that a bullet-proof vest is "legal and the Court will instruct you, the law is, it's perfectly legal to wear a bullet proof vest." Likewise, the government noted in its closing that "carrying a shield," without more, is not illegal.

5. Moreover, assuming, *arguendo,* that the trial court erred in admitting evidence of the bullet-proof vest, this error was harmless given the strength of the government's case. The record reflects that 1) two police officers testified to seeing Jones in possession of a "Tec–9" type weapon; 2) Jones fled from the approaching police cruiser; 3) the police found a "Tec–9 looking" weapon in the path of Jones' flight soon after his arrest; and 4) the lack of moisture on the top-side of the weapon indicated it had been recently discarded. Thus, we can reasonably conclude that the jury's verdict was not "substantially swayed" by any prejudice from admission of the bullet-proof vest into evidence. *See McClellan v. United States,* 706 A.2d 542, 561 (D.C.1997) (Ferren, J., dissenting) (noting that trial court error is harmless unless it "substantially swayed" the jury verdict) (citing *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)), *cert. denied,* —— U.S. ——, 118 S.Ct. 2073, 141 L.Ed.2d 149 (1998).

clearly prejudiced his substantial rights as to jeopardize the very fairness and integrity of his trial." *Irick v. United States,* 565 A.2d 26, 32 (D.C.1989) (citing *Watts v. United States,* 362 A.2d 706, 709 (D.C. 1976) (en banc)). "The Supreme Court has cautioned that reversal for plain error in cases of alleged prosecutorial misconduct should be confined to 'particularly egregious' situations." *Id.* (quoting *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)).

▮ On this record, we discern no trial court error. A criminal conviction "is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements must be viewed in context." *Id.* at 32 (citing *Young, supra,* 470 U.S. at 11, 105 S.Ct. 1038). Here, the prosecutor's "Knights of the Round Table" analogy suggested a reasonable inference based on the evidence. In particular, the recovered weapon and the bullet-proof vest, properly admitted into evidence, provided the factual premise for the prosecutor's "sword" and "shield" metaphor. Moreover, the prosecutor's assertion that it would be improbable to find a "knight without his sword" directly countered the defense theory that Jones never possessed a weapon.[6] Although Jones maintains that the prosecutor's "patently inflammatory language" went beyond the evidence in an attempt to provoke the jury's fear of illegal weapons and to inflame their passions regarding safety in the community, we conclude that these remarks, when viewed in context, "were tied sufficiently to a discussion of the evidence and ... do not rise to the level of transgressions warranting reversal." *Peoples v. United States,* 640 A.2d 1047, 1057 (D.C.1994).

Accordingly, appellant's convictions are

*Affirmed.*

**6.** Jones could have offered evidence to counter the government's theory by explaining why Jones felt he needed the protection of a bullet-proof vest even if he did not intend to provoke gun-fire by use of his own gun.