**George Phillip FOREMAN III, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 98–CF–168.

District of Columbia Court of Appeals.

Argued Sept. 27, 2001.

Decided March 7, 2002.

---

Mark J. Rochon, Washington, DC, for appellant.

Jeffery W. Bellin, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney at the time the brief was filed, John R. Fisher, Roy W. McLeese III, and Glenn L. Kirschner, Assistant United States Attorneys, were on the brief, for appellee.

Before SCHWELB, RUIZ, and WASHINGTON, Associate Judges.

Washington, Associate Judge:

On November 18, 1998, George Foreman III was convicted of first-degree (premeditated) murder while armed,[1] possession of a firearm during a crime of violence,[2] assault with a dangerous weapon,[3] and carrying a pistol without a license.[4] His first trial ended in a mistrial when the jury was unable to reach a unanimous verdict on any of the charges. On appeal, Foreman contends that the trial court denied him a fair retrial by allowing the government to improperly introduce additional evidence at his second trial that was unfairly prejudicial. During oral argument, counsel for Foreman characterized the errors complained of as arising from the government's use of "juicy bits of evidence searching for theories of admissibility." Specifically, Foreman argues that the trial court: 1) erred by admitting testimony suggesting that a key witness had been threatened by Foreman's girlfriend, Vanessa Nicholas, allowing the prosecution to bolster the witness' credibility improperly; 2) erroneously admitted a false statement by Ms. Nicholas as an adoptive admission; 3) erred by not providing additional curative relief *sua sponte* when a detective testified that he was investigating others associated with Foreman's place of employ; 4) committed reversible error when it failed to strike *sua sponte* testimony concerning additional ammunition; 5) abused its discretion by allowing the government to elicit testimony from a defense witness that she had previously stabbed Foreman; 6) abused its discretion by permitting cross-examination of a witness concerning a letter the witness had written to Foreman; and 7) abused its discretion by allowing the government to use a letter written by Foreman as impermissible character evidence. Foreman contends that the individual and/or cumulative impact of the above enumerated errors warrants reversal. We agree with the latter statement and reverse.

### FACTUAL SUMMARY

Early in the morning on May 6, 1996, Lewis Davis was shot multiple times and killed at an after-party in the Babylon

1. D.C.Code § 22–2101 (2001), D.C.Code § 22–4501 (2001).

2. D.C.Code § 22–4504(b) (2001).

3. D.C.Code § 22–402 (2001).

4. D.C.Code § 22–4504(a) (2001).

Night Club, located at 911 F Street, N.W. Sometime just after 1:00 a.m. shots rang out in the nightclub. The crowd panicked and fled. When the police arrived, they found the crowd milling about outside and the dead body of Lewis Davis lying on the floor. An evidence technician was called to the club to process the crime scene. The technician noticed cartridge casings and bullet fragments on the floor of the club in the area where the decedent was lying. The technician recovered eight expended cartridge casings from the club.

The government presented two eyewitnesses to the shooting, Zanita Harris (Harris) and Rodman Lee (Lee). Harris left the club on the night of the shooting and made no reports to the police until early August 1996. At trial, Harris testified that she saw Davis, whom she knew personally, and that she was within a couple of feet of Davis and Foreman when the shots rang out. Similarly, Lee, who testified pursuant to an agreement he reached with the government in connection with his own criminal problems, stated that immediately before the shooting he witnessed a brief exchange between Foreman and Davis, after which Foreman pulled out a black handgun and started firing at Davis. Neither Lee nor Harris came forward immediately and appellant remained at large.

A little over three weeks after the murder, on May 31, in an unrelated shooting at an Exxon Station in Southeast Washington, D.C., Detective Ronnie Hairston, an undercover police officer, followed a Camry as it drove away from the scene of the incident. The detective watched as someone leapt from the Camry, tossed an item into the woods and returned to the vehicle.

Lee, who was present at the Exxon shooting as well, claimed that as he drove away from the shooting he glanced into the Camry and recognized Foreman as the driver. The Camry eluded the police and

was later found abandoned. When the police checked the wooded area where the man from the Camry appeared to have thrown something, they found a 9mm handgun. When tested against the casings found in the Babylon Club, the gun was determined to be the same weapon used to kill Davis.

Based on this information the police obtained a search and arrest warrant for Foreman. Detective William Hamann, the lead detective investigating the murder, executed the warrant at the home of Vanessa Nicholas, Foreman's girlfriend. Although Nicholas claimed that Foreman was not there at the time, the police found him coming out of an upstairs bedroom and arrested him. As part of a search of the home, Detective Hamann located two boxes of ammunition under the bed—including Speer Lawman 9mm ammunition, the same brand of ammunition used to kill Davis.

## DISCUSSION

### 1. *Admission of the Threat Evidence*

Defense counsel objected to the admission of testimony concerning a conversation Ms. Harris had with Foreman's girlfriend, Vanessa Nicholas, after the murder. The trial court overruled defense counsel's objection and allowed the government to elicit testimony that a conversation took place and that after the conversation Harris was scared. The trial court, however, did not allow the government to elicit the substance of the conversation.

The witness testified that the conversation with Foreman's girlfriend was the reason that she contacted the police about the shooting, after remaining silent for nearly three months. Ms. Harris stated that she contacted the police because she could not figure out "why she and [Foreman's girl-

friend] had the conversation." The witness stated that "she was scared and did not know what else to do." Foreman contends that the trial court abused its discretion by admitting testimony explaining why the witness came forward after waiting three months because the probative value of the testimony was substantially outweighed by its prejudice.

■ Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence more or less probable than it would be without the evidence. SUPER. CT. R. EVID. 401; *Jones v. United States*, 739 A.2d 348, 351 (D.C.1999); *Punch v. United States*, 377 A.2d 1353, 1358 (D.C.1977); *Fowel v. Wood*, 62 A.2d 636, 637 (D.C.1948). For evidence to be relevant, it must be "related logically to the fact that it is offered to prove, . . . the fact sought to be established by the evidence must be material . . . and the evidence must be adequately probative of the fact it tends to establish." *Jones, supra,* 739 A.2d at 350 (internal citations omitted). A trial court's evidentiary ruling concerning the relevance of evidence rests within the discretion of the trial court and will be upset only upon a showing of abuse. *Id.* (citing *Blakeney v. United States*, 653 A.2d 365, 368 (D.C. 1995)).

"Generally, evidence showing the bias or motivation of a witness may be relevant in assessing the witness' credibility." *Mercer v. United States*, 724 A.2d 1176, 1184 (D.C. 1999) (citing *Springer v. United States*, 388 A.2d 846, 855 (D.C.1978)). The court in *United States v. Thomas*, 86 F.3d 647 (7th Cir.1996), reviewed the probative value of such evidence and noted that evidence of bias and motivation are relevant in limited circumstances. *Id.* at 653–54 (cited with approval in *Mercer, supra,* 724 A.2d at 1184). "For example, threat evidence can be relevant to explain a witness' inconsis-

tent statements, delay in testifying, or even courtroom demeanor indicating intimidation." *Id.* In such situations, the evidence of threats is necessary to account for the specific behavior of a witness that, if unexplained, could damage a party's case.

■ In this case, the government tendered the evidence "simply to explain the delayed reporting." The evidence, however, did not explain the delay: Ms. Harris' delay occurred well before she was approached by Foreman's girlfriend, not after. The evidence simply explained why the witness did come forward, a point with minimal relevance. The lack of relevance is more significant when, as in this case, defense counsel was not questioning Ms. Harris' delay. The government asserts that this distinction draws too fine a line. However, such a fine line must be drawn when admitting inflammatory evidence that may have substantial prejudicial effect.

That the evidence may be minimally relevant does not end our analysis. The trial judge has the discretion to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. *Mercer, supra,* 724 A.2d at 1184 (citing *Johnson v. United States*, 683 A.2d 1087, 1090 (D.C.1996)) (en banc); *see also* FED R. EVID. 403. "Evidence of threats is subject to the same Rule 403 balancing test as other relevant evidence." *Thomas, supra,* 86 F.3d at 653–54 (quoting *United States v. Qamar*, 671 F.2d 732, 736 (2nd Cir.1982)). "We recognize that the evaluation and weighing of evidence for . . . potential prejudice is quintessentially a discretionary function of the trial court, and we owe a great degree of deference to its decision." *Jones v. United States*, 739 A.2d 348, 351 (D.C.1999) (quoting *Johnson v. United States*, 683 A.2d 1087, 1095 (D.C. 1996)).

"Unfair prejudice ... means an undue tendency to suggest decisions on an improper basis, commonly, though not necessarily, an emotional one." FED.R.EVID. 403 advisory committee's note; *see also Old Chief v. United States,* 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997). Our case law instructs the trial court to be cautious in the admission of potentially inflammatory evidence. *Frank v. United States,* 104 U.S.App. D.C. 384, 262 F.2d 695 (1958);[5] *District of Columbia v. Cooper,* 483 A.2d 317 (D.C.1984).[6]

In the present case, Foreman relies on this court's opinions in *Carpenter v. United States,* 635 A.2d 1289 (D.C.1993) and *Mercer v. United States,* 724 A.2d 1176 (D.C.1999), to support his argument that the admission of testimony concerning the witness' fear was improperly admitted. Both cases stand for the general proposition that if the trial court admits evidence of threats solely to attack the general credibility of the witness, such admission is an abuse of discretion. *Carpenter, supra,* 635 A.2d at 1294; *Mercer, supra,* 724 A.2d at 1184;[7] *see also McClellan v. United States,* 706 A.2d 542, 551 (D.C.1997).

■ This court has expressed concern about evidence of fear and/or intimidation of witnesses. "[E]vidence concerning a witness' fear tends to be prejudicial because it suggests the witness fears reprisal at the hands of the defendant or his associ- ates if she testifies." *Mercer, supra,* 724 A.2d at 1184 (quoting *McClellan v. United States,* 706 A.2d 542, 551 (D.C.1997)). Unless such evidence is closely tied and probative as to a particular defendant, or a defendant opens the door to such evidence, the evidence should not be admitted. *Mercer, supra,* 724 A.2d at 1194.

In *Carpenter,* the witness explained her delay in coming forward by saying that she lived in a neighborhood where people kill snitches. This testimony provided an explanation for the witness' fear, which had prevented her from going to the police. This court held that the testimony about the snitches was relevant and admissible for the limited purpose of explaining the fears that had kept [the witness] away from the police. *Carpenter* tolerated admission of evidence of the witness' fear as a conditional response to repeated inquiry by opposing counsel about the witness' delay in coming forward. *Carpenter, supra,* 635 A.2d at 1294.

Here, the government presented the evidence on direct examination in the face of a defense proffer that it would not exploit the delay in reporting. This evidence was prejudicial in two ways. First, it potentially implicated Mr. Foreman in a scheme to threaten a key witness in the absence of any proof he sought to bring about the act. Second, it implied guilty knowledge by Mr.

---

**5.** In that case, the defendant had been convicted of willfully failing to register as an agent of a foreign government and of willfully acting as an agent without registering. Evidence of a statement made to the FBI was introduced connecting the defendant with the disappearance of a foreign aviator. This was deemed reversible error on the ground that the probative value of this evidence was too slight and its prejudicial tendency too great to justify its admission into evidence. *Id.*

**6.** In a prisoner's action for negligence and malpractice against the District of Columbia, the trial court prohibited the District from introducing evidence of the prisoner's juvenile record. The appellate court found an abuse of discretion, holding that the probative value of this evidence, given the issues in the case, was so great as to outweigh any prejudicial impact it might have. *Id.*

**7.** "Federal courts have found appeals to the passions of the jury, such as the presentation of evidence of threats against a witness, to have the potential for great prejudice against the defendant." *Mercer, supra,* 724 A.2d at 1184 (internal citations omitted).

Foreman without any evidentiary basis, merely because Ms. Nicholas' actions suggest his culpability. This type of evidence could very well have aroused the passions of the jury and suggested a conviction based on their aversion to Mr. Foreman, rather than on the evidence. For these reasons, Ms. Harris' fear testimony was admitted in error because the probative value of the evidence was substantially outweighed by the prejudicial impact. However, for reasons stated in the remainder of this opinion, we need not decide if this error, standing alone, substantially swayed the jury so as to require reversal. *See Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

## 2. *False Statement to the Police Concerning Foreman's Identity*

■ The Detective responsible for executing the arrest warrant for Foreman was questioned by the government concerning the events that occurred that evening at Ms. Nicholas' home. He testified that it was 2:30 a.m. on September 26, when the police officers arrived at Ms. Nicholas' apartment. Ms. Nicholas answered the door and was informed that they had an arrest warrant for Foreman. Nicholas told the police that Foreman was not there but that her boyfriend was upstairs. The officers entered the apartment and soon located an individual upstairs. The detective, who had become familiar with Foreman's face, recognized the man as appellant. Ms. Nicholas, however, produced a false identification card for Foreman, one that had his photograph and another name. Defense counsel objected generally to the questions concerning Ms. Nicholas' attempt to produce the false identification card without stating a basis for the objection. The trial court overruled the objection and permitted the testimony.

■ Foreman asserts that the trial court abused its discretion by erroneously admitting Vanessa Nicholas' false statements to the police. The government contends that Foreman failed to properly preserve the issue for review because he failed to object with appropriate specificity. Foreman contends that the trial court's pretrial ruling regarding the preservation of objections from the first trial was ambiguous and that he objected to the admission of the same evidence in the first trial. The evidence was admitted under the adoptive admissions exception to the hearsay rule in the first trial. Given the pretrial ruling of the first trial court, we find that the issue was properly preserved.

The government, in objecting to this court's consideration of this claim of error, cites to our decision in *Green v. United States,* 718 A.2d 1042 (D.C.1998), noting that we have held that where a party does not object at a subsequent trial and the trial judge informs the parties that objections from the earlier trial will not carry over to a retrial, issues not objected to in the second trial are not preserved. *Green, supra,* 718 A.2d at 1054 n. 13. The present case is a far cry from the clear trial court ruling in *Green.* In the instant case, the trial court stated at the start of the retrial that it had reconsidered its rulings in the first trial and maintained all of them except two, which the court then went on to modify. The trial court then stated, "and having considered just about every other ruling I've made in the case, I don't think there's any other I want to revisit." At this point defense counsel stated that he needed guidance from the court, "I don't think I've ever been in a retrial situation and we do want to preserve those objections." The trial court then stated that "defense counsel's statement was noted for the record, at this time, and you may note your objections during any bench

conferences." This colloquy leaves some ambiguity as to whether defense counsel's attempt to preserve objections from the first trial was accepted by the court or rejected. For reasons of fairness, the ambiguity is resolved in appellant's favor. Thus we find, under the circumstances of this case, that the issue has been adequately preserved.

■ In evaluating a claim of abuse of discretion by the trial court, "we must determine, first, whether the exercise of discretion was in error, and, if so, whether the impact of the error requires reversal." *Hollingsworth v. United States*, 531 A.2d 973, 978 (D.C.1987). The trial court's theory, expressed at the first trial, for admitting the false statements of Ms. Nicholas was the adoptive admissions theory. Foreman notes this court's long-standing belief that evidence of tacit or adoptive admissions is replete with possibilities of misunderstanding, *Holmes v. United States*, 580 A.2d 1259, 1262 (D.C.1990), and asserts that it was error for the trial court, under the facts of this case, to admit Ms. Nicholas' statements. We agree.

■ "Testimony that an accused adopted statements of another person as his own may be admitted in evidence as an exception to the hearsay rule if it clearly appears that the accused understood and unambiguously assented to the statements." *Brown v. United States*, 464 A.2d 120, 123 (D.C.1983) (citing *Harrison v. United States*, 281 A.2d 222, 224 (D.C. 1971)) (internal citations omitted). "To constitute an admission by silence, the statement must be made in the defendant's presence and hearing, and the defendant must actually understand what was said and have an opportunity to deny it." *Holmes, supra*, 580 A.2d at 1262.

■ Here, the statements of Ms. Nicholas fail to pass muster as adoptive admis-

sions under this court's precedents. As a threshold matter, the judge must make a preliminary determination, "whether a jury could reasonably conclude that the defendant unambiguously adopted another person's incriminating statement." *Id.* at 1264. "Whether the party's conduct manifested his assent to the statements of the other is a preliminary question for the judge. Unless he so finds, the statement is excluded." *Naples v. United States*, 120 U.S.App. D.C. 123, 126, 344 F.2d 508, 511 (1964).

Applying the foregoing principles, we are compelled to conclude as a matter of law that no reasonable jury could find that Foreman unambiguously assented to Ms. Nicholas' statements. Foreman was hardly in a position to assent or dissent from Ms. Nicholas' statements. Foreman was barely clad, and in the presence of multiple arresting police officers who had a valid warrant for his arrest. Indeed, the detective testified that the police had Foreman "up against the wall" when Ms. Nicholas was indicating that he was not George Foreman. Under the circumstances the admission of Foreman's conduct, in not speaking up to refute Ms. Nicholas' nonincriminating statement, only served to improperly suggest some kind of guilty knowledge by Foreman. Moreover, there is no evidence that Foreman had an opportunity to deny her statement given his circumstances. Consequently, the trial court erred in admitting this evidence as an adoptive admission.

### 3. *Trial Court's Failure to Sua Sponte Provide Curative Instruction*

■ On direct examination, Detective Hamann identified a photograph of Foreman taken after his arrest. He stated that the picture was an accurate representation of Foreman, noting that he remembered that Foreman was wearing a shirt that

said "Fresh Gear." The detective explained that 'Fresh Gear' [is] "a clothing store which I knew he was associated with and which I knew other individuals who I was investigating were associated with." Defense counsel did not object to the witness' statement regarding others he was investigating and the detective was later dismissed.

During recess, defense counsel informed the trial court that he did not move to strike the detective's statement concerning investigating other people associated with the store because he did not want to draw attention to the statement. Defense counsel asked the trial court to admonish the detective for making "those sort of gratuitous remarks." In response, the trial court stated that he did not feel it would be appropriate to speak to the witness but asked that the government tell the witness not to make any similar comments.

■ The record discloses that defense counsel made no further request for relief in the trial court but rather argues, for the first time on appeal, that the prejudicial effect of the detective's statement warranted the granting *sua sponte* of a mistrial or additional relief by the trial court. Absent such a request, Foreman must show plain error in the trial court's failure to *sua sponte* provide additional relief. *Allen v. United States*, 649 A.2d 548, 556 (D.C.1994); *Busey v. United States*, 747 A.2d 1153, 1166–67 (D.C.2000) (noting that in light of the fact that appellant did not request additional relief, the standard for appellate review is whether plain error was committed). In determining whether Foreman's conviction should be reversed, "it is our function to review the record for legal error or abuse of discretion by the trial judge, not by counsel." *Hunter v. United States*, 606 A.2d 139, 145 (D.C.1992) (quoting *Irick v. United States*, 565 A.2d 26, 33 (D.C.1989)). This means that we must decide whether

the judge compromised the fundamental fairness of the trial, and permitted a clear or obvious miscarriage of justice, by not intervening *sua sponte* when the detective made his remarks.

Even assuming for the sake of argument that the statements of the detective were improper, we find no error in the trial court's actions. In this case, the trial court's attention was called to the detective's statement by defense counsel during recess. Defense counsel stated that the reason he did not object during the detective's testimony was because "he did not want to draw any extra attention to it." He asked that the court admonish the witness from making similar statements in the future, which the trial court advised the government to do. Foreman cannot now reasonably argue that the trial court's failure to take further action compromised the fundamental fairness of his trial. It was defense counsel who requested that no extra attention be given to the statement because further attention may have emphasized the unfavorable evidence to the jury.

Moreover, the lack of any further request by Foreman's counsel suggested that he did not perceive any substantial prejudice. Defense counsel, himself, called the statement "gratuitous," a fact which is itself suggestive in some measure of a lack of prejudice. *See Parks v. United States*, 451 A.2d 591, 613 (D.C.1982). In addition, the detective's answer was a brief statement in the context of a multi-day trial. Thus, it can hardly constitute plain error, affecting the fundamental fairness of the trial, for the trial court to fail to *sua sponte* take some other unrequested measure.

### 4. Testimony Concerning the .32 Caliber Ammunition

■ The aforementioned detective testified that he found two boxes of ammuni-

tion under the bed in the front bedroom of Ms. Nicholas' apartment. One box contained two rounds of Speer 9mm Luger ammunition and the other box contained numerous rounds of .32 caliber ammunition. Foreman concedes the relevance of the Speer 9mm Luger ammunition; it matched the make and caliber of ammunition used in the shooting of decedent, Lewis Davis, and matched the ammunition found in the gun discarded after the Exxon shooting. Foreman, however, challenges for the first time on appeal, the admission of the .32 caliber ammunition. Foreman asserts that the .32 caliber ammunition was irrelevant because it bore no evidentiary relationship to this case and should have been excluded *sua sponte* by the trial court. Foreman did not object to the admission of the .32 caliber ammunition at trial; therefore, we review for plain error. To merit reversal Foreman must demonstrate that the admission of the .32 caliber ammunition was so clearly prejudicial as to jeopardize the fairness of his trial. *See Watts v. United States,* 362 A.2d 706, 709 (D.C.1976) (en banc).

■ Assuming that the admission of the additional ammunition was error, we think that the admission of the .32 caliber ammunition did not so unfairly prejudice the jury to constitute a miscarriage of justice. Although the .32 caliber ammunition was irrelevant to the present case, "it is not reversible error to admit irrelevant evidence that lacks probative value but does not prejudice a defendant." *United States v. Mejia,* 909 F.2d 242, 246 (7th Cir.1990).

It is difficult to conceive that the admission of a larger number of bullets jeopardized the fairness of appellant's trial. The detective's statement was brief and was never alluded to at any other point in the trial. Moreover, the statement was made during a routine restatement of the items

recovered from the search of Nicholas' apartment. The fact that the government did not mention the ammunition in opening, closing, or rebuttal statements to the jury further demonstrates the lack of prejudice from the admission of the extra ammunition. In addition, there was no evidence introduced at trial that connected the ammunition to a bad act of the appellant. As such, the statements concerning the ammunition were not so clearly prejudicial as to jeopardize the fairness of the trial. For these reasons, the admission of the extra ammunition was not plain error.

### 5. *Bias of Defense Witness by Stabbing*

■ Foreman argues that the trial court abused its discretion by allowing the prosecution to elicit testimony from Angela Swearengin, a defense witness, that she had previously stabbed Foreman and that Foreman had not pressed charges. After a defense objection, the government explained that Foreman's refusal to press charges gave the witness "a reason to curry favor with him." As a result, the trial court overruled the objection. We review the trial court's ruling for abuse of discretion. *Best v. United States,* 328 A.2d 378, 381 (D.C.1974); *In re J.D.C.,* 594 A.2d 70, 75 (D.C.1991).

■ Among the valid objectives of cross-examination is the impeachment of a witness by demonstrating bias. *Best, supra,* 328 A.2d at 381 (citing *White v. United States,* 297 A.2d 766 (D.C.1972)). It is often stated that bias evidence is "always relevant." *Williams v. United States,* 642 A.2d 1317, 1322 (D.C.1994); *see also Villaroman v. United States,* 87 U.S.App. D.C. 240, 241, 184 F.2d 261, 262 (1950). "A party's right to undertake [a] demonstration of the bias of his adversary's witness coexists on the same plane with the adversary's prerogative to use the witness. Such an effort may properly solicit over a

wide range any information of potential value to the triers of fact in the assessment of credibility." *Wynn v. United States,* 130 U.S.App. D.C. 60, 62, 397 F.2d 621, 623 (1967).

However, there are limits to the types of evidence that may be used to impeach the credibility of a witness. The law generally prohibits impeachment of a witness with specific instances of conduct for the sole purpose of attacking the witness' credibility. *Williams v. United States,* 642 A.2d 1317, 1321 (D.C.1994). There are, however, exceptions.

In relying on one of these exceptions, the government argues that the evidence was relevant to demonstrate the bias of Ms. Swearengin in favor of Foreman in at least three ways. First, the incident evinced an unusually strong relationship between the couple, second, the jury could infer from the incident that the witness had an incentive to curry favor with Foreman so that he would not help to initiate the filing of charges or, third, the evidence was relevant to demonstrate bias simply because she felt she owed him.

Here, we find the government's use of Ms. Swearengin's stabbing of Foreman completely unnecessary and, therefore, substantially outweighed by prejudice, because the witness was amply impeached with other evidence of bias. Ms. Swearengin's bias in favor of Foreman may have included her love for him, their child together, and the possibility that Foreman might contribute to the support of that child, all of which were elicited by the government. It is hard to fathom how this evidence could have created a reasonable inference that Ms. Swearengin was attempting to curry favor with Foreman by testifying untruthfully. The evidence of Ms. Swearengin's stabbing of Foreman to show bias in his favor was relatively unimportant in light of all the other evidence

showing her strong bias in favor of Foreman. Consequently, it was error for the trial court to allow cross-examination into Ms. Swearengin's bias based on her assault of Foreman.

While we need not decide if this error, standing alone, substantially swayed the jury so as to require reversal, *see Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), we do note that the error complained of was not insignificant. Ms. Swearengin was an important defense witness because her testimony, if believed by the jury, distanced Foreman from the Exxon shooting and, therefore, the gun discarded during the incident. Moreover, the fact that Ms. Swearengin, a member of the National Guard with no criminal record, would stab Foreman, may have implied to the jury that Foreman was a bad actor, who did something violent to provoke her anger on that occasion and was, therefore, capable of the egregious acts for which he was on trial.

### 6. *Letters Written to Foreman by Defense Witness*

Horace Swarn (Swarn) testified in response to the government theory that Foreman shot Lewis Davis because Davis had beaten his friend, Swarn, in a fight. Swarn testified that he had never been in a fight with Davis. During cross-examination, Swarn admitted that he was "close" to Foreman. The prosecutor then inquired as to whether Swarn considered Foreman to be "one of [his] best friends." Swarn replied that he did not consider Foreman one of his best friends. The government then attempted to introduce letters the witness had written to Foreman proclaiming his affinity for Foreman. Defense counsel promptly objected. At a bench conference, the prosecutor informed the trial court that he sought admission of

the letters as proof of the witness' strong bias in favor of Foreman. The prosecutor explained that the letters repeatedly referenced the witness' love for Foreman and "about how he is never going to let anything happen to him." Thereafter, the trial court overruled defense counsel's objection and permitted cross-examination of Swarn with portions of the letters that referenced the witness' affinity for Foreman.

Swarn was asked about two specific portions of the letters, one where he wrote to Foreman, "I ain't come to see you but killing me you will never do cause I will die for you before I see anything happen to you;" and a second statement, "I done seen the best of friends go at it but we are the best of friends and we will outlast them all and I refuse to let anything or anyone come between us, we are brothers."

Foreman asserts that the trial court abused its discretion by permitting the prosecution to cross-examine Swarn concerning the letters. Foreman alleges that the letters had little probative value because Swarn admitted that he had a close relationship with Foreman. As a result, Foreman contends that the probative value of the letters was substantially outweighed by their prejudicial effect.

This court has always recognized "that the evaluation and weighing of evidence for relevance and potential prejudice is quintessentially a discretionary function of the trial court, and we owe a great degree of deference to its decision." *Johnson v. United States*, 683 A.2d 1087, 1095 (D.C. 1996) (en banc) (citing *Light v. United States*, 360 A.2d 479, 481 (D.C.1976)).

■ There can be no question that the bias of a witness is always relevant in assessing a witness' credibility. *Hollingsworth v. United States*, 531 A.2d 973, 978 (D.C.1987). The trustworthiness of a witness' testimony may be undermined by demonstrating that bias or partiality motivates the witness. *Benjamin v. United States*, 453 A.2d 810, 811 (D.C.1982). "The bias of a witness may be a crucial component in the jury's assessment of the credibility of a witness and, thus, is always a proper subject of cross-examination." *Springer v. United States*, 388 A.2d 846, 854 (D.C.1978) (quoting *Hyman v. United States*, 342 A.2d 43, 44 (D.C.1975)). Cross-examination concerning bias is especially important where, as here, the credibility of a key witness is a central factor to be weighed by the trier of fact in a search for the truth. *In re C.B.N.*, 499 A.2d 1215, 1218 (D.C.1985).

However, evidence otherwise relevant may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice or the needless presentation of cumulative evidence. *Johnson, supra*, 683 A.2d at 1099; *see also* FED.R.EVID. 403. Our case law instructs the trial court to be cautious in the admission of potentially prejudicial evidence, making sure to balance the probative value of the evidence against any prejudicial effect. *See District of Columbia v. Cooper*, 483 A.2d 317, 323 (D.C.1984).

Here, the prosecutor stated that the letters were probative of bias. This theory of relevance was based on a supposed need to fill the gap between Swarn's admission that he was "very close" to Foreman and his denial that Foreman was his best friend. While it may have been appropriate to fill that gap, the question we must address is whether it is consistent with our prior decisions regarding the admission of highly prejudicial evidence. We are troubled by the trial court's decision to allow the government to introduce marginally relevant yet highly inflammatory portions of Swarn's letter to Foreman. While we

again acknowledge the broad discretion enjoyed by the trial court when it comes to questions of admissibility, the trial court must be careful to always balance the probative value of the proffered evidence against the danger of unfair prejudice.

The trial court's decision to allow the government to explore Swarn's bias in favor of Foreman by cross-examining him with highly inflammatory passages from a letter after Swarn had already testified that he was "very close" to Foreman, was an abuse of discretion. The probative value of establishing that Swarn considered Foreman his best friend as opposed to a "very close" friend was substantially outweighed by the prejudice from references to portions of the letter referring to Foreman as a killer and suggesting that Foreman was capable of killing even those individuals who were closest to him if he believed they were disloyal. While there was a reference in the letter to Foreman being Swarn's best friend, the government chose not to tailor its impeachment to that narrow passage, opting instead to add flavor to the trial by injecting more juicy evidence into the mix. Given the limited probative value of distinguishing between "best friend" and "very close" friend in the context of this bias examination, we are convinced that the references to Foreman as a killer, even assuming the passages also showed Swarn and Foreman to be "best friends," had a prejudicial impact that substantially outweighed its probative value.

### 7. *Foreman Letter to Ms. Nicholas*

■ The trial court, over defense objection, permitted the government to cross-examine Foreman concerning the contents of a letter he had written to Ms. Nicholas. Foreman contends that the trial court abused its discretion by allowing such cross-examination because the letter lacked relevance and was an impermissible attempt to introduce character evidence. We agree.

We review the trial court's ruling for abuse of discretion. *Best v. United States,* 328 A.2d 378, 381 (D.C.1974); *In re J.D.C.,* 594 A.2d 70, 75 (D.C.1991). A trial court's evidentiary ruling concerning the relevance of evidence rests within the sound discretion of the trial court and "will be upset ... only upon a showing of grave abuse." *Jones, supra,* 739 A.2d at 350 (quoting *Blakeney v. United States,* 653 A.2d 365, 368 (D.C.1995) (internal citation omitted)).

On appeal, the government argues that the excerpt was "independently relevant to establish a close relationship between Foreman and Ms. Nicholas." While we agree that evidence is admissible to show the nature of a long-standing relationship, *McCoy v. United States,* 760 A.2d 164, 179 (D.C.2000), it is difficult for this court to rationalize this proffered theory of admission with the contents of the letter. The portion of the letter introduced into the record stated: "You're the clown that is lost, you talk like I don't know who is dying bitch. I know who is dying and I know who's doing the killing Bitch. I ain't know [*sic*] farmer in this town, I am well-known. Yes, I am trying to say I'm like that and you know it as well as I do." In addition, the envelope in which the letter had been mailed, which referenced Washington, D.C. as "The Murder Capitol [*sic*] of the World," was also introduced into the record.

In all candor, we fail to see how this evidence shows that Foreman enjoyed a close relationship with Ms. Nicholas. Foreman had already admitted to having a child with Ms. Nicholas, to being in her home on "thousands" of occasions, and writing her while incarcerated on unrelated charges. Given that evidence, we find

it difficult to accept that the government introduced a letter referring to Ms. Nicholas as a clown and worse in order to show a "close relationship."

The prejudicial nature of the excerpt is clear. The letter was written well before the shooting incident in this case and is, therefore, not independently relevant to the question of who killed Lewis Davis. Instead, the letter suggests that Foreman believes he is "well-known" and that he is well connected to criminal elements because he knows "who is dying" and "who's doing the killing." This evidence had only one purpose and it was not to show a close relationship with Ms. Nicholas. This evidence was introduced to paint Foreman as a bad man with a predisposition to be involved in killings. Because the government's theory of relevance does not bear scrutiny and the excerpt is substantially more prejudicial than probative, we find that the trial court abused its discretion by allowing the government to cross-examine Foreman with the contents of his letter.

### 8. *The Cumulative Impact*

■ The standard for reversal where more than one error is asserted on appeal is whether the cumulative impact of the errors substantially influenced the jury's verdict. *See Price v. United States*, 697 A.2d 808, 811 (D.C.1997). Foreman contends that even if each of the evidentiary errors, individually, did not warrant reversal, the cumulative effect of the errors do. Foreman is correct in asserting that individual errors, not warranting reversal, may when combined so impair the right to a fair trial to warrant reversal. *Price, supra*, 697 A.2d at 811.

■ In assessing whether the combination of errors may have substantially influenced the jury's verdict requiring reversal of Foreman's convictions, we evaluate the significance of the alleged errors and their combined effect against the strength of the prosecution's case. *See Warren v. United States*, 436 A.2d 821, 842 (D.C.1981).

■ In reviewing the trial court's various evidentiary rulings, we concluded that there were five instances where the trial court failed to properly consider the admission of evidence. The first error was found in the admission of testimony concerning Ms. Harris' conversation with Foreman's girlfriend. We held that evidence of threats potentially implicated Foreman in the bad act of another, and in the absence of proof that he sought to bring about the act. The second error was found in the admission of statements made by Ms. Nicholas as adoptive admissions. We held that Nicholas' statement only served to improperly prove guilty knowledge by Foreman. Consequently, the admission of this consciousness of guilt testimony through the statements of Ms. Nicholas was error. The third error occurred when the trial court allowed the government to elicit that a defense witness had previously stabbed Foreman and Foreman had not pressed charges. We ruled that the evidence was cumulative and, therefore, unnecessary to impeach the witness for bias. The fourth error occurred in the admission of letters written to Foreman by his "close friend." We found the government's proffered theory of admission problematic noting that the probative value of the letters was substantially outweighed by the prejudicial effect. The fifth error resulted in the admission of a prejudicial letter that had almost no probative value.

Many of the errors complained of went to critical issues at trial. For example, the admission in error of evidence that a key defense witness had previously stabbed Foreman, ostensibly admitted to show bias, sullied both the witness' and the appellant's character unnecessarily, where

the witness had already been impeached for bias. This witness was an important defense witness whose testimony could have distanced Foreman from the discarded gun. In addition, admission of the letters during the cross-examinations of Swarn and Foreman constituted impermissible character evidence, as the government sought to paint Foreman as a bad man.

Obviously, some of the trial court errors were more significant than others, and some of the wrongly admitted evidence was more prejudicial than other evidence; however, overall, reversal is necessary. The evidence against Foreman was not overwhelming. Of the two eyewitnesses, one was testifying pursuant to an agreement he reached with the government in connection with his own criminal problems and the other's testimony was controverted on key facts of the case. Consequently, we cannot say "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error[s]." *Hunter v. United States,* 606 A.2d 139, 144 (D.C.1992) (en banc) (quoting *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). For the foregoing reasons, the judgment of the trial court is reversed and the case is remanded for a new trial.

*So ordered.*