602 A.2d 146 (1992)
In re R.E.G., Appellant.
No. 89-477.
District of Columbia Court of Appeals.
Argued November 6, 1990.
Decided January 15, 1992.
Anita Josey, Public Defender Service, with whom James Klein, Public Defender Service, Washington, D.C., was on the brief, for appellant.
Mary L. Wilson, Asst. Corp. Counsel, with whom Herbert O. Reid, Sr., Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for the District of Columbia.
Before WAGNER, Associate Judge, and GALLAGHER and NEWMAN[*], Senior Judges.
GALLAGHER, Senior Judge:
This case presents for our determination whether there was error when a trial judge in a suppression hearing refused to suppress evidence seized incident to appellant's arrest for unauthorized use of vehicle. Appellant was convicted of possession with *147 intent to distribute cocaine. D.C.Code § 33-541(a) (1988 Repl.). He contends there was no probable cause for his arrest and the conviction should be reversed because the arresting officer relied on inaccurate computer information. Finding, as we do, that the information relied upon was not established as inaccurate and that probable cause existed independently of the information, we affirm.

I
Testifying at a suppression hearing, Officer Cortwright, the arresting officer, stated that on February 3, 1989, at 8:45 p.m., while assigned to the auto theft unit, he received a stolen vehicle report from Willie Walker, the owner of a blue Nissan truck. According to the report, the truck was stolen by a young man in the vicinity of Georgia Avenue and Park Road, N.W. Walker told the officer that he was giving a ride to a young man, whom he knew by first name only, and when he went into a store, leaving the keys in the ignition, the young man drove off. Although somewhat puzzled about those circumstances of the theft, Cortwright accepted that the truck was stolen and consequently filed a missing vehicle report. A computer printout, entered into evidence at the suppression hearing, showed the tag number of the truck entered as stolen at 11:02 p.m.
On February 7, 1989, at 7:35 a.m., while on duty, Cortwright observed appellant driving a truck corresponding to the description Walker had given him. A check revealed that the tag number matched a number on the officer's ten/ten sheet, which is a list of the license plate numbers of stolen vehicles, issued earlier that morning. To verify the accuracy of the ten/ten sheet, the officer called the police dispatcher for the latest computer information. The dispatcher, indicating that the computer was temporarily down, told Cortwright to rely on his "ten/ten." After calling for assistance, he pulled up behind the truck which was stopped and the responding police car pulled in front of appellant. Cortwright, who was in uniform, walked to the driver's side of the truck. When appellant saw the officer, he floored the gas pedal in an attempt to escape, however, the gear was in neutral so, although the engine revved, the truck did not move. The two passengers with appellant attempted to jump out. All three were arrested and, in a search incident to arrest, the police recovered seven bags of cocaine from appellant.
Appellant was initially arrested for unauthorized use of a vehicle (UUV), as well as possession of cocaine. However, he was not charged with UUV because the officer believed him when he later stated that Walker had rented the truck to him in exchange for "crack."
At the suppression hearing, appellant's counsel produced as an expert witness a computer programmer employed in the data processing division of the police department. In addition to testimony about the computer system and procedures attending its use, the expert interpreted data from the computer relating to the status of the truck. He testified that according to the computer printout, the truck was entered into the computer as stolen on February 3rd and remained listed as stolen until it was cleared from the computer on February 7th after appellant's arrest. A computer printout from February 4th revealed seven inquiries regarding the truck's tag number. To each inquiry, the computer reported no record that the truck was stolen. The witness could not determine the exact reason for this inconsistency. He opined that it could have been a computer malfunction or an improper formatting of the inquiry into the computer that would have failed to elicit the correct information.
Defense counsel proffered that a missing witness, Walker, would have testified that he reported the truck's recovery on February 4th. Counsel also proffered, based on inference, that an unidentified policeman checked the computer after receiving the phone call and, when the truck's tag number did not show up as stolen, did not attempt to enter the correct information. Appellant contended there was no probable cause for his arrest, because, if the missing *148 witness had testified,[1] his testimony would, in effect, have shown that the ten/ten report was based on inaccurate computer information that was the result of police error. The court concluded that, even if the proffers were proven, the officer acted in good faith and that probable cause existed for an arrest.

II
In this court, appellant contends that because the arresting officer relied on erroneous information supplied by the police, there was no probable cause for his arrest. He argues that regardless of the good faith belief and reasonable actions of the arresting officer, if the information upon which he relies is faulty, the resulting arrest is invalid. See Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971).
We note at the outset that there is no proof that the computer information was in fact inaccurate. The evidence does not establish that the owner of the truck, Walker, reported its recovery. A mere proffer is not evidence. The witness did not testify and there was no opportunity for the government to cross-examine the witness. There was no basis for the trial judge to conclude that the witness was credible. It is error for the trial court, absent a stipulation, to accept as evidence an unsubstantiated proffer. See Jackson v. United States, 589 A.2d 1270 (D.C.1991).
In this case, the trial court did not accept appellant's proffer as evidence. The court stated:
My point is if I accept your proffer it seems to me the case can be decided and unless you show me more it is not going to be decided in your favor, which is all the more reason why I will accept your proffer. If I thought your proffer was going to make a factual difference in the outcome of the case, I couldn't accept the proffer and move on. But what I'm saying is assuming the evidence in the light most favorable to you, which is not what I ordinarily do, if the law is still not in your favor, that ends the discussion and we don't need to wait for your witness. It is only if your proffered evidence is critical to the outcome that I have to wait for the evidence to come incompetently.
(Emphasis added.)
Later in ruling on the matter the court had this to say:
And frankly, I would like to assume the truth and the competence of your proposed testimony, I suspect over the objection of the Government, because the Government's position yesterday was that their evidence would show that no one called the Police Department to report the car recovered. And I'm prepared to make the ruling I proposed about which we disagree, even assuming that there is competent evidence that the police were so informed and that I credit that evidence over the police evidence that no one had informed the police that the car was recovered.
So almost in effect taking the evidence in the light most favorable to you, I'm still prepared to rule that there was probable cause to make this stop.
(Emphasis added.) The trial judge accepted, for the sake of argument, that the owner of the truck called to report the recovery, and ruled there was still probable cause for an arrest because the officer acted in good faith in relying on the ten/ ten sheet. Furthermore, the trial court merely assumed appellant's hypothesis that the subsequent inquiries showing the truck not stolen resulted in police failure to enter the correct information into the computer.[2] Although the hypothesis is one possible explanation, it is merely speculation on the *149 part of appellant where there is no evidence establishing the purported phone call and no evidence that any officer received a call and then failed to enter the information into the computer.[3] The trial court made it clear that if it thought the proffer would make a factual difference in the outcome of the case, it couldn't accept the proffer. Accordingly, we hold that the computer information upon which the officer relied was not shown to be inaccurate and provided sufficient probable cause for the arrest.
Even if we were to accept appellant's proffer as evidence, we would still conclude that there was probable cause for his arrest. The Fourth Amendment requires a standard of reasonableness, not certainty, and "sufficient probability ... is the touchstone of reasonableness." Hill v. California, 401 U.S. 797, 804, 91 S.Ct. 1106, 1111, 28 L.Ed.2d 484 (1971). It is not reasonable to require law enforcement agencies to instantly update their computer information and the Fourth Amendment does not impose such a stringent demand. Other courts have recognized that some delay in correcting or updating computer records is to be expected. See Commonwealth v. Riley, 284 Pa.Super. 280, 425 A.2d 813 (1981); State v. Cross, 164 N.J.Super. 368, 396 A.2d 604 (1978); State v. Somfleth, 8 Or.App. 171, 492 P.2d 808 (1972). In Childress v. United States, 381 A.2d 614 (D.C.1977), this court addressed a delay in updating the computer and held that a reasonable administrative delay, even though unexplained, was acceptable.
Thus, assuming arguendo the validity of the proffer, our decision in Childress would compel our conclusion that there was probable cause to justify the police action. The inaccurate computer information at issue here is attributable to an "[a]dministrative delay[ ] attendant to the operation of any metropolitan area police department." Id. at 617. In Childress, a "four-day delay" in cancelling information, "two days of which were attributable to the weekend ... [did] not rise to the level of administrative negligence fatal to the government." Id. at 617 n. 3. In this case, there was a three-day delay from the time the information was reported until the computer was updated. Moreover, the initial stolen report was made on Friday, February 3rd, the truck was reported recovered on Saturday, February 4th, and appellant was arrested on Tuesday, February 7th. Thus, as in Childress, two of the three days were attributable to a weekend.

III
The accuracy of the computer information was not the only factor to consider in deciding the validity of the arrest. Probable cause is determined by this court as a matter of law after a review of the totality of all of the circumstances of the case. See Allen v. United States, 496 A.2d 1046, 1048 (D.C.1985); United States v. Green, 216 U.S.App.D.C. 329, 333, 670 F.2d 1148, 1152 (1981). Based on the totality of the circumstances in this case, Cortwright's actions were those of a reasonable, prudent police officer in possession of facts, independent of the computer information, sufficient to constitute probable cause.
An examination of the record reveals that, in addition to the ten/ten sheet, he had personal knowledge of the theft. Cortwright was the same officer who took the stolen report and was intimately familiar with the details of the alleged theft. He knew, firsthand, the appearance of the truck, testifying that he recognized it from its description before checking the license tags. "I first saw the truck pull in, it was a blue Nissan, it appeared similar to the same vehicle I had taken a report for. As I drove pas[t] itthey pulled up in the alley I saw the tag number." He knew the place where the truck was stolen and he observed the truck in the same vicinity. He also had a description of the alleged *150 thief, given to him by the owner. He stated, "I had knowledge that a young, black male had taken it, I saw a young black male driving it, I knew the owner, he was an older black man, so I knew it wasn't the owner driving it."
A check of the current ten/ten sheet, issued that morning, showed that the truck was still listed as stolen. He then attempted to confirm that information by checking with the police dispatcher, who informed him that the computer was "down" and to rely on the ten/ten sheet.
Added to the officer's reasonable suspicions was the fact that at the time of the stop, appellant and his passengers attempted to evade the police. The officer stated that he approached the driver's side of the truck and "the door was locked, I was in uniform. I knocked on the window and told him to get out of the truck and he floored it. Luckily it was in neutral." At the same time the passengers tried to jump out of the truck. Flight from the police, under these circumstances, is surely evidence of a guilty conscience and when combined with other factors can provide probable cause for arrest. See California v. Hodari D., ___ U.S. ___, 111 S.Ct. 1547, 1549 n. 1, 113 L.Ed.2d 690 (1991); Smith v. United States, 558 A.2d 312, 319 (D.C. 1989) (en banc) (Ferren, J. concurring).
In very similar circumstances, where a "stolen sheet" of the police department did not accurately reflect the current situation regarding the status of the property in question, but the arresting officer relied upon it, this court has upheld the arrest, stating that although the officer "was mistaken in his belief that appellant was driving a stolen car ... at the moment of arrest, he clearly had probable cause to believe a crime had been committed and that appellant was the person who had committed it." Patterson v. United States, 301 A.2d 67, 69 (D.C.1973).
Accordingly, we conclude that, on the totality of the circumstances, the officer had probable cause for an arrest.
So ordered.
NEWMAN, Senior Judge:
I dissent. On February 3, 1989, Willie Walker contacted the Washington D.C. Metropolitan Police Department ("MPD") and reported his blue Nissan pickup truck stolen. He spoke with Officer Cortwright of the Fourth District Auto Theft Unit, who entered the information into the Washington Area Enforcement ("WALES") computer system. Cortwright testified that he had doubts about Walker's "story" when he took the stolen vehicle report from Walker. These doubts about the theft of the truck appear to have been well-founded. On February 4th, the day after reporting the truck stolen, Walker called the Fourth District Auto Theft Unit and reported the vehicle recovered.[1] For reasons still *151 unknown, (about which more later), the recovery report was not properly entered into the WALES computer.
Cortwright's involvement with the Nissan truck was not at an end. At about 7:30 a.m. on February 7th, at Georgia Avenue and Morton Street, N.W., Cortwright saw the Nissan truck. He checked the "hot sheets"[2] he had obtained from the WALES computer that morning, showing the Nissan truck as stolen. Cortwright then radioed the police department dispatcher to confirm the status of the truck.[3] He was told the computer was down and to rely on the "hot sheet." He did so and arrested R.E.G. for Unauthorized Use of a Motor Vehicle (UUV), D.C.Code § 22-3815 (1989 Repl.).[4] During a search incident to the arrest, Cortwright found seven bags of cocaine in R.E.G.'s pocket. He was charged with possessing cocaine with intent to distribute. D.C.Code § 33-541(a) (1988). He was adjudicated delinquent after a stipulated trial.
R.E.G. moved to suppress the cocaine and a statement. The trial court conducted an evidentiary hearing. The government called two witnessesOfficer Cortwright *152 and Officer Watkins.[5] Cortwright testified about receiving the report on February 3rd, and his activities leading to the arrest on February 7th. The government then rested. After obtaining reassurance from the trial court that it accepted as true the proffered testimony of Willie Walker,[6] R.E.G. called Joel S. Bristor, a civilian computer programmer employed by the MPD. Bristor testified about the WALES computer and the "hot sheets" printouts. He reviewed computer printouts regarding the Nissan truck entered into the computer as stolen at 11:02 p.m. on February 3rd (some two hours after Cortwright took the stolen vehicle report). The printouts further reflected that the truck was cleared from the system as recovered at 11:29 a.m. on February 7th (about four hours after R.E.G.'s arrest). In addition, the printouts showed that on February 4th, the WALES computer received several inquiries about this same Nissan truck; the computer responded to each such inquiry that it has no stolen report on such a truck. Bristor's testimony on this anomaly was as follows:
THE COURT: How do you explain then when there were seven inquiries on the fourth as to whether the car was stolen that the answer came back "no"?
THE WITNESS: I'm sorry, in my expertise I don't understand that unless it is a malfunction of the computer when they go throughI don't have the experience level to understand why that would be indicated on the long scan.
The trial court, primarily relying on our opinion in Patterson v. United States, 301 A.2d 67 (D.C.1973), denied the motion to suppress. It is to this ruling I now turn.
The seminal authority in this area is Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971).[7] Under the Whiteley rule, sometimes called the fellow officer rule, police officers are entitled to act upon an official communication that an arrest is to be made. This is so even if the officer is personally unaware of the underlying facts and circumstances leading to the reason for the communication. Thus, if there was probable cause at the source of the communication, and the officer relied in good faith on the communication, the arrest and subsequent search will be valid.[8]
However, all subsequent activity is improper, regardless of the good faith reliance on the information by the officer, if there is not probable cause at the source. The Court explained that:
We do not, of course, question that Laramie [county] police were entitled to act on the strength of the radio bulletin. Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause. Where, however, the contrary turns out to be true, an otherwise *153 illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest.
Whiteley, supra, 401 U.S. at 568, 91 S.Ct. at 1037. Thus, under Whiteley, there are two questions: first, whether the arresting officer acted reasonably in relying on the police records, and second, whether probable cause existed at the source of the communication.
A number of Supreme Court cases have held that if a valid warrant was issued or probable cause existed, a reasonable mistake by the officer in acting on the warrant or probable cause will not invalidate the arrest and ensuing search.[9] In so holding the Court has said "[W]e must judge the constitutionality of [the police officers'] conduct in light of the information available to them at the time they acted." Maryland v. Garrison, supra note 9, 480 U.S. at 85, 107 S.Ct. at 1017. "[B]ecause many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part." Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949).
In Patterson, supra, 301 A.2d at 69, we held constitutionally valid the arrest of the driver of a car listed on a "hot sheet," as confirmed by a check with police radio dispatcher and WALES, although the vehicle had been reported as recovered earlier that day. Interestingly, although Whiteley had been decided almost two years earlier, we did not cite it. Rather, we held that the officers' reliance on the computer record was reasonable. Id. Subsequently, we decided Childress v. United States, 381 A.2d 614 (D.C.1977). Childress was arrested after a check of his car's license tags showed four outstanding traffic warrants for him. In fact, Childress had posted collateral on these warrants four days earlier. We distinguished Whiteley because the warrant at issue in Whiteley was void ab initio unlike the traffic warrants at issue in Childress which "enjoyed unassailable legal existence, at least until November 14, when appellant Childress posted collateral to satisfy them." Id. at 617. We went on to point out that the collateral was posted on a Friday, the arrest was on the following Tuesday, an interval of four days, two of which we noted were weekend days. Id. at 617-18 n. 3.
The core of our holding in Childress on this issue is where there is a "combination of reasonable administrative delay and reasonable police reliance on misinformation produced by such a delay" there is no basis on which to suppress the evidence. Id. at 617-18.[10] It is the issue of reasonableness of the administrative delay to which I now turn.
Since the government has the burden of proving the constitutional validity of the warrantless arrest and subsequent search, Malcolm v. United States, 332 A.2d 917, 918 (D.C.1975), it is the government's burden to establish that the failure to correctly and promptly enter the data was reasonable. Here, the government makes no effort *154 to do so. The only witness called by the government who gave testimony pertinent to the arrest was Officer Cortwright. He gave no testimony on the reasons for the administrative delay. When the government concluded its presentation, R.E.G. was entitled to have his motion granted. The government had presented nothing to satisfy its burden of showing that its failure to promptly and correctly enter the recovery report was reasonable. However, in addition to the proffered testimony that Walker had reported the vehicle recovered on February 4th (which the court stated it was taking as true), R.E.G. chose to call a witnessJoel Bristor. In making the ultimate determination on the motion to suppress, the trial court was entitled to consider his testimony as well. See, e.g., Franey v. United States, 382 A.2d 1019, 1022 (D.C.1978).
Thus we turn to Bristor's testimony. Reading it in the light most favorable to the government, as we must, D.C.Code § 17-305 (1989 Repl.), it simply provides nothing to satisfy the government's burden of proof. In essence, Bristor's testimony was that the vehicle was entered into the WALES computer as stolen at 11:02 p.m. on February 3rd (some two hours after Cortwright took the stolen vehicle report from Walker) and was listed as recovered at 11:20 a.m. (some four hours after R.E.G. was arrested). On February 4th, seven inquiries were made about the vehicle; to each the computer reported that the vehicle was not stolen. As previously stated, the central part of his testimony was given as follows:
THE COURT: How do you explain then when there were seven inquiries made on the fourth as to whether the car was stolen that the answer came back "no"?
THE WITNESS: I'm sorry, in my expertise I don't understand that unless it is a malfunction of the computer when they go throughI don't have the experience level to understand why that would be indicated on the long scan.
In sum, there is insufficient evidence (if any at all) in the record to satisfy the government's burden of showing that its failure to promptly and correctly enter the data was reasonable. Since the majority holds otherwise, I respectfully (but emphatically) dissent.
NOTES
[*] Judge Newman was an Associate Judge at the time of argument. His status changed to Senior Judge on March 11, 1991.
[1] Walker, the truck owner, did not testify at the suppression hearing. He did not appear in response to a subpoena and the U.S. Marshall was unable to locate him to bring him to court.
[2] We note also that the government did not accept that Mr. Walker reported the truck recovered. The government stated that it had a printout showing that inquiries about the truck were made of the computer on February 4th but nothing that indicated "in response to what that inquiry was made." The government conceded only that appellant's theory was consistent with the printout.
[3] One could draw an equally logical argument that after entry of the stolen vehicle in the computer on February 3rd, the ten/ten sheet issued on the 4th would have shown the truck as stolen. Any officer on duty seeing the truck's license number as stolen on his ten/ten would have called to verify the information with the most recent computer update, as Cortwright did prior to appellant's arrest. This might explain the numerous inquiries made of the computer on the 4th.
[1] For the purpose of the suppression hearing, the trial court accepted as true the proffered testimony of Willie Walker, who did not appear in spite of bench warrants in aid of subpoenas. The court did so, since in its view, this testimony would not make a difference. To the extent the majority takes a different view, it appears to me that they misread the record.

The government's brief describes the proceedings as follows:
The court, without government objection, accepted the following proffer of what Mr. Walker's testimony would have been had he responded to the respondent's subpoena ordering him to appear as a witness.9 Mr. Walker telephoned an unnamed police official on February 4, 1990 (the day after he reported the truck as stolen and three days before R.G.'s arrest), and reported that his truck had been recovered. Tr. 136, 138. However, the police official did not clear the tag number from the computer list because, in response to his inquiries, the computer indicated (erroneously) that the tag was not listed as stolen. Tr. 138.
9 Although subpoenaed to testify, Mr. Walker did not show up over a series of days of motions hearings and the U.S. Marshal was unable to locate him to bring him to court. The District did not object to the court accepting the proffer because the court indicated first that the proffered evidence was insufficient to defeat probable cause as a matter of law. Tr. 135-137.
As stated by the majority, R.E.G. moved to suppress the cocaine. At the suppression hearing on March 17, 1989 (conducted immediately prior to trial) defense counsel informed the court that she was not ready to proceed because the government had not provided discovery of a WALES report, ten-ten reports (hot sheets) and that the owner of the vehicle, Mr. Walker, although subpoenaed, had not appeared. R.E.G.'s brief recites what happened thereafter as follows:
The court decided to proceed with the motion hearing in order to assess how critical the "hot sheet" was to the defense case. (Tr. I 17) Defense counsel also informed the court that she has subpoenaed Mr. Walker, who had not appeared (Tr. I 16-17). The court then issued an attachment for Mr. Walker's arrest, and continued the case for Monday, March 20, 1989 (Tr. I 17-19).
When the court reconvened, Mr. Walker still had not been located. Judge Winfield asked defense counsel for an ex parte proffer concerning Mr. Walker's potential testimony in an effort to gauge its significance (Tr. II 6). At the bench defense counsel proffered that Mr. Walker would say that he reported his truck stolen on February 3, 1989. On February 4, 1989 he called the police station and reported it recovered. Id. Defense counsel reasoned that since the truck had been reported recovered on February 4, 1989 and because that information was within the collective knowledge of the police department, there was no probable cause three days later for the arrest of R.E.G. for UUV. Thus cocaine seized from his person should be suppressed (Tr. II 6-8). The judge replied that if the arresting officer relied in good faith on the "hot sheet" which listed the truck as stolen, she was going to find probable cause (Tr. II 9-10); (see also id. at 17-18). The court then continued the matter until March 21, 1989.
The next day, when Mr. Walker was still unavailable, the court offered to assume the truth of defense counsel's proffer (Tr. III 40-41). The government did not expressly object. Id. In fact, the government apprised the court that it had a computer printout from the police department which corroborated the defense proffer that a call was made to the police station concerning the truck on February 4, 1989 (Tr. III 41-42). Defense counsel added that the radio run in the case also established that a call was made to the police station about the truck on February 4, 1989 (Tr. III 44).
On March 22, 1989 Mr. Walker had still not been found. The government reminded the court of its statement on the previous day that it would assume the truth and competence of defense counsel's proffer for the purpose of the findings of fact, and the government urged the court to do so (Tr. IV 47-48). The court agreed and moved forward with the suppression hearing. Id.
I further note that in its brief on appeal, the District of Columbia never raises an issue of whether the accepted proffer constitutes evidence; indeed its brief proceeds on the basis that it does.
The record fully supports the position taken by both the government and the respondent on this pointthe trial court accepted as true for the purpose of the suppression hearing the proffered testimony of Willie Walker, albeit based on the belief (erroneous in my view) that the testimony would not make a difference. Indeed, after R.E.G. was arrested, Walker acknowledged to the police that R.E.G. was using the car with permission in payment for drugs R.E.G. sold Walker. The record suggests the stolen vehicle report may have arisen out of a drug dispute as well. In other words, everyone involved in this case, except for the majority, has the same view of what the trial court did on this score.
Likewise, the majority's reliance of Jackson v. United States, 589 A.2d 1270 (1991) is misplaced. There, the court accepted the government's proffer of testimony as true in face of a contradictory proffer of testimony by the defendant. In our case, it was the government which urged the court to accept the defendant's proffer as true.
[2] A "hot sheet" or "ten-ten" lists stolen vehicles in a shorthand format.
[3] Cortwright was aware that the computer updates approximately hourly. He had obtained the hot sheets when he came on duty prior to 6:00 a.m. on the 7th.
[4] This charge was later dropped. See note 1 supra.
[5] R.E.G. contended that his statement was obtained in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Watkins' testimony relates solely to that issue. R.E.G. does not challenge the trial court's ruling refusing to suppress the statement.
[6] See note 1 supra.
[7] In Whiteley, supra, a county sheriff obtained an arrest warrant from a county magistrate for Whiteley, who was suspected of committing burglary. The sheriff then issued a bulletin for the arrest through the statewide law enforcement radio network. Relying on the bulletin, a police officer in another town stopped Whiteley and during the car search, discovered incriminating evidence. The Supreme Court reversed the Wyoming courts and held that Whiteley's arrest was illegal and the evidence seized incident to it should be suppressed because the affidavit presented to the magistrate did not make out probable cause.
[8] The Supreme Court extended the rule further to apply in non-warrant cases in United States v. Hensley, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). In that case, a police officer issued a flyer advising police departments in the area that Hensley was wanted for robbery. Acting on the flyer, a police officer in another town stopped Hensley in his car, and a search of the car produced several guns. The Court held that the officer's reliance on the flyer was proper even if the flyer was supported only by articulable facts supporting a reasonable suspicion. However, the Court reiterated its warning of Whiteley that "[i]f the flyer has been issued in the absence of a reasonable suspicion, then a stop in the objective reliance upon it violates the Fourth Amendment." Id. at 232, 105 S.Ct. at 682.
[9] See Illinois v. Rodriguez, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) (police wrongly believed third party had common authority over defendant's premises, thus could give consent to search); Maryland v. Garrison, 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987) (mistaken belief that there was only one apartment on third floor of a building in asking for and executing a search warrant); Hill v. California, 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971) (police had probable cause to arrest one man but mistakenly arrested someone else).
[10] Other courts have adopted a different analysis. See, e.g., Carter v. State, 18 Md.App. 150, 305 A.2d 856, 859 (1973) (failure of police to properly enter the fact of recovery of a stolen car vitiates a subsequent arrest for operating the "stolen" car, relying on Whiteley); People v. Jennings, 54 N.Y.2d 518, 523, 446 N.Y.S.2d 229, 232, 430 N.E.2d 1282, 1285 (N.Y.1981) ("good faith of the enforcement authorities cannot validate an arrest based upon a warrant which had been vacated four months before....") 54 N.Y.2d at 523, 446 N.Y.S.2d at 232, 430 N.E.2d at 1285, relying on Whiteley); People v. Ramirez, 34 Cal.3d 541, 194 Cal.Rptr. 454, 458, 668 P.2d 761, 764 (1983) ("However, if we impute to the arresting officer the collective knowledge of law enforcement agencies for the purpose of establishing probable cause, we must also charge him with knowledge of information exonerating a suspect formerly wanted in connection with a crime.") 194 Cal.Rptr. at 458, 668 P.2d at 764, relying on Whiteley.