Jonathan F. DAWKINS, Appellant,

v.

UNITED STATES, Appellee.

No. 10–CF–407.

District of Columbia Court of Appeals.

Argued April 11, 2012.
Decided April 26, 2012.

---

Monica V. Douglas, Public Defender Service, with whom James Klein and Shilpa S. Satoskar, Public Defender Service, were on the brief, for appellant.

Nicholas P. Coleman, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, and Roy W. McLeese III, Chrisellen R. Kolb, and Cormac Connor, Assistant United States Attorneys, were on the brief, for appellee.

Before FISHER and OBERLY, Associate Judges, and PRYOR, Senior Judge.

OBERLY, Associate Judge:

Jonathan Dawkins, appellant, was indicted on one count each of carrying a pistol without a license, in violation of D.C.Code § 22–4504(a) (2001); possession of an unregistered firearm, in violation of D.C.Code § 7–2502.01 (Supp.2009); and (3) unlawful possession of ammunition, in violation of D.C.Code § 7–2506.01(3), in connection with his possession of a loaded gun. Dawkins pled guilty to all charges but reserved the right to appeal the trial court's denial of his motion to suppress the gun. On appeal, Dawkins argues that the trial court erred in precluding him from cross-examining the arresting officer during Dawkins's suppression hearing about a civil suit for false arrest pending against the officer without first hearing a proffer from Dawkins on the relevance of the proposed cross-examination. We agree. We vacate Dawkins's conviction and remand

for further proceedings consistent with this opinion.

## I. BACKGROUND

On March 7, 2009, Jonathan Dawkins and a friend were walking down the street when they were approached by three Metropolitan Police Department (MPD) Officers, including Officer Craig Solgat. Officer Solgat greeted Dawkins and asked him if he had any drugs or guns in his possession; Dawkins replied that he did not. Officer Solgat searched him and, finding a loaded gun concealed under his jacket, arrested him.

Dawkins moved to suppress the gun. At the hearing held on Dawkins's motion to suppress, Officer Solgat testified that after he greeted Dawkins, but before the search, he asked Dawkins whether he could check him for drugs or guns and that Dawkins voluntarily put his hands over his head and mumbled to him to "go ahead." In contrast, Dawkins testified that Officer Solgat did not ask for permission to search him but rather ordered Dawkins to put his hands over his head and searched him without his consent.

When Dawkins was cross-examining Officer Solgat, the following exchange occurred among counsel and the trial court:

[Defense counsel]: Okay. Now, when you—you know that you're being sued for false arrest in this jurisdiction, right?

[Prosecutor]: Objection.

The Court: Overruled. And was it by someone in this case or just by somebody else?

[Defense counsel]: By somebody else.

The Court: All right. And so, I'll sustain the objection to that at this point.

[Defense counsel]: Your Honor, may I proffer?

The Court: Not right now. The question is on that night was there a consent. And to the extent that someone else has sued not in this case, I conclude it's not relevant to the question presented in this hearing.

Despite the words, "[n]ot right now," the trial court's refusal to allow Dawkins to make a proffer (and consequent preclusion) of any cross-examination of Officer Solgat about the civil suit pending against him was not revisited at any subsequent point. In addition, the trial court cut off Dawkins's cross-examination of Officer Solgat at other times during the suppression hearing. On one occasion, the trial court sustained an objection to cross-examination about a statement Officer Solgat had made on direct examination about previous robberies in the area. In response to Dawkins's attempt to explain why he thought the questioning was relevant to Officer Solgat's credibility, the trial court stated, "I'm asking you to move on. This is a question whether at the time there was . . . consent that would have permitted a pat down of his person." On a second occasion, the court, *sua sponte*, cut short a line of questioning that Dawkins believed bore on Officer Solgat's credibility, stating, "[D]o you think you could move on? You've got two more minutes. . . . I'm giving you two more minutes, so please . . . finish[ ] up. If you want to put on witnesses, you certainly may."

Noting that Officer Solgat's testimony conflicted with Dawkins's on the key issue of consent, and that the decision turned, ultimately, on a "credibility contest" between the two witnesses, the trial court found that Dawkins did consent to the search. The trial court specifically credited the testimony of Officer Solgat and found that Dawkins mumbled "go ahead." The trial court reasoned that, although the fact that he mumbled made Dawkins's consent somewhat ambiguous, the fact that he put up his arms to facilitate the search made his mumbled consent less ambigu-

ous. (Dawkins, on the other hand, testified that he put up his hands and did not resist being patted down because he "didn't want the situation to get worse"; he "was trying to cooperate.") Immediately after his motion to suppress was denied, Dawkins agreed to plead guilty to all charges against him, reserving the right to appeal the denial of his motion to suppress. Dawkins was sentenced to concurrent terms of incarceration and supervised release for each of the three counts, all of which were suspended except for eighteen months' probation. This appeal followed.

## II. DISCUSSION

On appeal, Dawkins argues that the trial court erred in refusing to allow any questioning about the lawsuit for false arrest that was pending against Officer Solgat without first hearing a proffer from Dawkins on the relevance of this proposed questioning. He contends this questioning was necessary to allow him to develop facts from which the trial court could have drawn an inference of bias. The government responds that this claim of error was not preserved, that the trial court did not err, and, in any event, that any error was harmless.

### A. Standard of Review

█ As an initial matter, we reject the government's contention that Dawkins failed to preserve the claimed error by failing to ask the trial court's permission to proffer the relevance of his proposed cross-examination of Officer Solgat about the civil suit a second time. Specifically, the government argues that Dawkins should have raised the issue again when he raised the court's exclusion of questioning about Officer Solgat's statements about previous robberies.

Although the trial court prefaced its ruling excluding inquiry into the civil suit with the phrase, "Not right now," the trial court made it clear throughout the hearing that it would not entertain questioning about facts that it considered outside the scope of the issue of consent, even if they related to Officer Solgat's credibility. Immediately after saying, "Not right now," the trial court ruled, "The question is on that night was there ... consent. And to the extent that someone else has sued not in this case, I conclude it's not relevant to the question presented in this hearing." The definitiveness of the court's ruling is highlighted by the fact that, on two other occasions prior to this exchange, the trial court asked Dawkins to "move on," cutting him off even as he offered to explain why he believed certain questioning was relevant to Officer Solgat's credibility.

█ In light of these previous rulings, the exchange concerning the civil suit would have been understood by Dawkins as a clear indication that the matter was closed. The trial court already had expressed impatience with Dawkins's cross-examination and the record strongly suggests that the trial court hurried Dawkins through his questioning of Officer Solgat. Although Dawkins did raise the issue of the exclusion of questions exploring Officer Solgat's statements about previous robberies, this discussion came about after the trial court asked Dawkins whether he had any additional witnesses to present; the trial court did not suggest that it was willing to permit Dawkins to proffer the relevance of his proposed cross-examination of Officer Solgat or to recall Officer Solgat for additional cross-examination. As we have held, when "counsel has attempted to proffer a particular type of evidence and the trial court has made its unwillingness to entertain a proffer absolutely clear, counsel should not be expected to risk contempt by pressing further to make an offer of proof. Under such circumstances, counsel can be said to have preserved the point for review." *McBride*

*v. United States,* 441 A.2d 644, 657 (D.C. 1982). Because the trial court made it clear throughout the hearing that it was unwilling to consider any testimony other than Office Solgat's and Dawkins's competing versions of the "consent" issue, Dawkins preserved his claimed error by offering to proffer reasons for his attempted cross-examination of Officer Solgat on the issue of the pending civil suit against him.

■ Having decided that Dawkins preserved his claimed error, we turn to the standard under which we will review it. Although they disagree about the outcome it requires in this case, Dawkins and the government both assume that the trial court's decision to exclude cross-examination for bias should be analyzed under the Sixth Amendment's Confrontation Clause. The government does not argue that the Confrontation Clause is inapplicable where, as here, the exclusion of bias cross-examination without first hearing a proffer on relevance takes place during a suppression hearing rather than at trial. We have not yet had occasion to decide whether Confrontation Clause rights apply with full force in the context of a suppression hearing; other jurisdictions have reached differing conclusions. *Compare United States v. Stewart,* 93 F.3d 189, 192 n. 1 (5th Cir.1996) ("we safeguard the right to cross-examine at the suppression hearing because the aims and interests involved in a suppression hearing are just as pressing as those in the actual trial") *with United States v. Thompson,* 533 F.3d 964, 969 (8th Cir.2008) (the "right of confrontation does not apply to the same extent at pretrial suppression hearings as it does at trial"). We need not decide this issue because, even in the absence of a Confrontation Clause violation resulting from the refusal to hear a proffer on the relevance of proposed cross-examination questions, a trial court's decision to exclude evidence is reviewed for abuse of discretion. *See Blunt v. United States,* 863 A.2d 828, 833 (D.C.

2004); *Scales v. United States,* 687 A.2d 927, 936 (D.C.1996) (in a suppression hearing, a trial court's exclusion of evidence is reviewed for abuse of discretion). Because we determine that the trial court abused its discretion by precluding Dawkins's cross-examination of Officer Solgat without first hearing Dawkins's proffer, we do not reach the constitutional issue.

■ Although we "broadly defer to the trial court's evidentiary decisions, we must still ensure that the court actually exercised its discretion and that it did so deliberately rather than arbitrarily." *Johnson v. United States,* 960 A.2d 281, 295 (D.C.2008). In order to determine whether there was an abuse of this discretion, we consider the following: (1) "whether the decision at issue was committed to the trial court's discretion"; (2) "whether the trial court recognized that it had discretion and whether it purported to exercise it"; (3) whether the record reveals "sufficient facts upon which the trial court's determination was based," noting that an "informed choice among the alternatives requires that the trial court's determination be based upon and drawn from a firm factual foundation"; (4) "whether the trial court exercised discretion erroneously," which requires us to consider "whether the decision maker failed to consider a relevant factor," whether the trial court "relied upon an improper factor, and whether the reasons given reasonably support the conclusion"; and (5) whether the error, if any, was harmless. *Id.* (quotation marks omitted).

**B. The Trial Court Abused Its Discretion in Excluding, Without Hearing a Proffer From Dawkins, Evidence of a Civil Lawsuit for False Arrest Pending Against Officer Solgat**

■ Relevant evidence means "evidence having *any tendency* to make the

existence of any fact that is of consequence more or less probable than it would be without the evidence." *Hunter v. United States,* 980 A.2d 1158, 1164 (D.C.2009) (quotation marks omitted). This threshold is "relatively easy to surmount; evidence certainly need not be unambiguous to have some probative value." *Id.* (quotation marks omitted). It is beyond argument that the "bias of a witness is always relevant in assessing a witness' credibility." *Foreman v. United States,* 792 A.2d 1043, 1056 (D.C.2002). "The trustworthiness of a witness' testimony may be undermined by demonstrating that bias or partiality motivates the witness." *Id.* "Cross-examination concerning bias is especially important where ... the credibility of a key witness is a central factor to be weighed by the trier of fact." *Id.*

Bias need not imply a deliberate attempt to lie; rather, bias describes "the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest." *Coles v. United States,* 808 A.2d 485, 489 (D.C.2002) (quotation marks omitted). In *Martinez v. United States,* 982 A.2d 789 (D.C.2009), the defendant sought to cross-examine a police officer about an internal investigation of the officer that was being conducted by the MPD. *Id.* at 793. The trial court permitted the defendant to ask the officer about the existence of the investigation but precluded him from asking about the subject matter of the investigation or any procedures associated with it. *Id.* We held that the trial court "unquestionably erred" because it "shut-off defense cross-examination" about the subject matter and details of the investigation and failed "to obtain additional background about the pending ... investigation (from the prosecutor, or through voir dire questioning of the Sergeant) that

would have given the court a more informed basis for ruling on defense counsel's request for broader bias cross-examination." *Id.* at 795. Similarly, in *Blunt,* 863 A.2d at 833, we held that a "trial judge may not prohibit all inquiry about an event" from which the finder of fact may infer bias. *See also Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (it is error for the trial court to "prohibit[ ] *all* inquiry into the possibility" that the government's witness is biased).

In this case, the trial court excluded as irrelevant any questioning about a civil lawsuit for false arrest pending against Officer Solgat without first hearing Dawkins's proffer. If the trial court had permitted Dawkins's proffer, it might have determined that the existence of, and some details about, this civil suit were relevant to Officer Solgat's credibility because they offered Dawkins the opportunity to expose the potential for bias, unconscious or otherwise, in the officer's testimony. Officer Solgat may have believed that the outcome of his civil suit would be affected by his testimony at the suppression hearing. For example, he may have believed that an admission that he searched Dawkins without unambiguous consent could be used against him in his civil suit. Whether this belief would have been objectively reasonable is not determinative, *Scull v. United States,* 564 A.2d 1161, 1165 (D.C.1989); rather, the mere fact that Officer Solgat knew that he was a party to the civil suit "at least arguably ... gave him a motive to slant his testimony." *Martinez,* 982 A.2d at 794 (quotation marks omitted).

Because the trial court might have concluded that the fact of the lawsuit and its subject matter were relevant, it was incumbent on the court to hear Dawkins's proffer so that it could make an informed decision about the permissible scope of

bias cross-examination. Indeed, had the trial court permitted the proffer, it might well have concluded that Dawkins's proposed cross-examination would have been irrelevant; we cannot say on this record that such an exercise of discretion would have been an abuse of the court's power. Here, however, by completely shutting off cross-examination on a subject that it might have determined to be relevant had it first heard Dawkins's proffer, the trial court denied itself the opportunity to fairly assess Officer Solgat's credibility, which, in the absence of any corroborating evidence, was the sole basis for its ruling on the suppression motion. *See Foreman*, 792 A.2d at 1056 ("Cross-examination concerning bias is especially important where ... the credibility of a key witness is a central factor to be weighed by the trier of fact."). By declining to hear the proffer, the trial court denied itself a "firm factual foundation," which would have allowed it to make "an informed choice among the alternatives" before it. *Johnson*, 960 A.2d at 295. As a result, the trial court abused its discretion by excluding evidence of the pending civil suit against Officer Solgat without hearing Dawkins's proffer.

### C. The Court's Exclusion of Evidence of a Civil Lawsuit for False Arrest Pending Against Officer Solgat Without First Hearing Dawkins's Proffer Was Not Harmless

 Even if a trial court abuses its discretion by excluding evidence, we will not reverse if the error was harmless. *Gay v. United States*, 12 A.3d 643, 646 (D.C.2011). Error is harmless only if we can "say with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *Id.* (quotation marks omitted). In making this determination, "we look at, *inter alia*, the closeness of the case." *Rid-*

*dick v. United States*, 995 A.2d 212, 220 (D.C.2010) (quotation marks omitted).

In this case, Officer Solgat was not just a *key* government witness; he was the government's *only* witness at the suppression hearing. *See, e.g., Blades v. United States*, 25 A.3d 39, 44 (D.C.2011) (where "the government's entire case rested on the testimony of one witness, the trial court should have been particularly prepared to permit bias cross-examination"). Furthermore, because there was no corroborating physical evidence or testimony from the other officers present at the scene, the entirety of the trial court's decision rested on Officer Solgat's credibility. As the trial court noted, its decision was based on a "credibility contest" between Officer Solgat and Dawkins. The great weight that the trial court necessarily placed on Officer Solgat's testimony, combined with the absence of any other evidence, makes the exclusion of evidence from which the trial court might have inferred bias highly significant. We cannot say with fair assurance that the trial court's erroneous exclusion of Dawkins's proposed cross-examination of Officer Solgat on the issue of the pending civil suit against him without first hearing Dawkins's proffer did not substantially sway its judgment. The error, therefore, was not harmless.

### III. CONCLUSION

By precluding the cross-examination of Officer Solgat on the existence of a pending civil suit for false arrest without first hearing Dawkins's proffer, the trial court ruled without the firm factual foundation necessary to make an informed decision. In so doing, the trial court abused its discretion. Accordingly, we vacate the trial court's order denying Dawkins's motion to suppress the gun found in his possession. Because Dawkins's guilty plea was conditioned on the validity of that ruling,

the judgment of conviction (but not his guilty plea) must also be vacated. The case is remanded to enable the trial court to hear a proffer from Dawkins on the relevance of the proposed bias cross-examination of Officer Solgat so that it may exercise its discretion in determining whether and to what extent to permit such cross-examination. If the trial court decides not to allow additional cross-examination, the court must explain the basis for such a decision; it may then reenter the judgment of conviction, from which a new appeal may be taken if Dawkins so desires. If, on the other hand, the trial court allows the cross-examination (or some of it), then the court must reopen the suppression hearing for the development of a complete record. If, after such a hearing, the court grants Dawkins's suppression motion, then he may withdraw his guilty plea.

*Vacated and remanded.*