*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-CO-1648

JONATHAN F. DAWKINS, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CF2-5420-09)

(Hon. Lynn Leibovitz, Trial Judge)

(Argued November 19, 2014                    Decided February 5, 2015)

*Shilpa S. Satoskar*, Public Defender Service, with whom *James Klein* and *Jaclyn S. Frankfurt*, Public Defender Service, were on the brief, for appellant.

*Nicholas P. Coleman*, Assistant United States Attorney, with whom *Ronald C. Machen Jr.*, United States Attorney, *Elizabeth Trosman*, *Chrisellen R. Kolb*, and *Brandon Long*, Assistant United States Attorneys, were on the brief, for appellee.

Before WASHINGTON, *Chief Judge*, BLACKBURNE-RIGSBY, *Associate Judge*, and FERREN, *Senior Judge*.

FERREN, *Senior Judge*:  This is Jonathan F. Dawkins' second appeal from the denial of his motion to suppress evidence of a gun and ammunition proffered by the government pursuant to an indictment for carrying a pistol without a

license[1] and two related charges.[2] Dawkins now alleges that during a remand proceeding ordered by this court, the trial court improperly relied upon a government proffer in ruling on the suppression motion. We affirm.

## I.

Dawkins entered a guilty plea to all charges, subject, however, to the right to appeal denial of his suppression motion. On Dawkins' first appeal, this court vacated the trial court's order denying the motion, as well as the judgment of conviction (but not the guilty plea).[3] We remanded the case for the trial court (i) to hear a proffer from Dawkins on the relevance of his proposed cross-examination of the arresting officer for bias, allegedly derived from a lawsuit by a third party against the officer for false arrest;[4] and (ii) to exercise the court's discretion, either by denying the motion to suppress once more, or by granting it to allow vacation of

---

[1] D.C. Code § 22-4504 (a) (2012 Repl.).

[2] One count of possession of an unregistered firearm, D.C. Code § 7-2502.01 (2012 Repl.), and one count of unlawful possession of ammunition, D.C. Code § 7-2506.01 (3) (2012 Repl.).

[3] *Dawkins v. United States*, 41 A.3d 1265, 1272-73 (D.C. 2012).

[4] The plaintiff accused the officer of falsely arresting him for scalping Redskins tickets. By the time of the remand hearing in the present case the civil false-arrest case had been settled.

the guilty plea.[5]

In this appeal, however, Dawkins contends, more broadly, that the purpose of the remand was to "make a complete record," and thus that the appeal before us is not limited to alleged bias derived from the third party false arrest suit (indeed, Dawkins does not appeal the trial court's ruling for the government on that issue).[6] In addition, contends Dawkins, the trial court was obliged to reopen a second line of questioning justified by an earlier encounter that Dawkins had experienced with the same Officer Solgat who arrested him in this case. That encounter, in 2007, had led to Dawkins' arrest and conviction for assaulting a police officer (APO)[7]—

---

[5] *Dawkins*, 41 A.3d at 1273.

[6] Appellant cross-examined Officer Solgat at length regarding the third party lawsuit against him for false arrest. The court credited Officer Solgat's testimony that the lawsuit pending against him at the time of the initial 2009 suppression hearing "did not influence his reasons for testifying the way he did," because (i) the prior contact between appellant and Officer Solgat in 2007 "is a far more potent basis on which to assess the motivations of each of them in testifying as they did" in the earlier hearing; (ii) a civil lawsuit involving a "completely unrelated party" would have "no bearing on testimony of a witness in a criminal case"; and (iii) Officer Solgat's testimony regarding the civil lawsuit indicated that he believed his actions would be vindicated in the result of the lawsuit.

[7] At the first suppression hearing, Officer Solgat testified on cross-examination that he had arrested Dawkins before, in 2007, during an incident in which Dawkins had fought with Solgat and other officers. Officer Solgat further testified that he had not recognized Dawkins from the previous arrest until after Dawkins had been apprehended in this case and identified by name.

an encounter, says Dawkins, that not only generated Officer Solgat's bias against him but also undermined the government's contention that Dawkins had voluntarily consented to the search that yielded the gun and ammunition at issue here.

At the hearing on remand, the trial court permitted some inquiry into the 2007, incident, after which defense counsel confirmed that she had asked all her questions of Officer Solgat about bias. When counsel tried to ask the officer questions pertaining to the voluntariness of Dawkins' consent, however, the court prohibited further cross-examination of Officer Solgat about the 2007 arrest. The court observed that this incident had "no relevance" because it failed to indicate that Dawkins "was less likely to consent later [in this case] or that the officer was more likely to fabricate today." Nonetheless, the court offered counsel an additional opportunity to proffer "what I would have heard about 2007 and how it would have been relevant to the issues before me." Counsel made the following proffer:

> The 2007 incident, it's an incident where Officer Solgat approached Mr. Dawkins where Mr. Dawkins hadn't done anything wrong and Officer Solgat wasn't claiming [Mr. Dawkins] was doing anything wrong. He ordered Mr. Dawkins to remove his hands from his pockets,

according to the officer's prior testimony[8] dealing with this incident. Mr. Dawkins told him no. In that particular incident after Mr. Dawkins told him no, the officer approached Mr. Dawkins and physically attempted to remove his hands from his pockets. And then he was arrested for resisting arrest and assaulting the officer.

After the proffer, the trial court agreed with counsel that the 2007 incident was relevant to bias, but the court then reaffirmed, as to voluntariness, its initial conclusion that the proffered incident

> would not lead to a reasonable inference in this case that either the defendant was less likely to have consented on this date than previously or that the officer was more likely to have overridden [defendant's] failure to consent on this date. . . . [T]here is insufficient connection between the two events.

Thereafter, the trial court again denied Dawkins' motion to suppress. The court concluded that, considering all the evidence of bias—drawn from both the third party lawsuit and the 2007 incident (testimony and proffer)—Officer Solgat was more credible than Dawkins. "[I]t's clear to me," said the court, that Dawkins "has bias against [Officer Solgat] because the [officer] had been the cause of his APO conviction a couple of years earlier." In contrast, noted the court, the officer

---

[8] The "prior testimony" to which counsel referred (discussing the 2007 APO arrest) was elicited during the 2009 hearing in the present case. See *supra* note 7.

did not recognize Dawkins "until after he had gotten [Dawkins'] ID" in this case —a fact, in the court's mind, that eliminated any bias inferable from the arrest itself. Nor, in the trial court's judgment, did Officer Solgat, after learning that Dawkins had been the APO culprit, exhibit a bias that undermined his credibility at the suppression hearing.

Finally, the trial court addressed the defense proffer (quoted above) regarding the 2007 incident for its bearing on voluntariness. The court concluded that even on the assumption that Dawkins had resisted arrest in 2007, as counsel claimed, there was no reason to believe, from that recalcitrant behavior, that Dawkins "would not consent [to a search] when encountering an officer . . . who had gotten him locked up before. . . . [Dawkins] would just as likely attempt to cooperate to try not to get arrested this time."

## II.

Dawkins seeks a second remand, arguing that—as to both bias and voluntariness—the trial court erred in relying on counsel's proffer about the 2007 arrest rather than allowing, at the remand hearing, additional cross-examination of Officer Solgat about the details of that 2007 encounter. In making this argument,

counsel relies on cases holding that a "mere proffer is not evidence."[9]  We review the trial court's ruling on the proffer for abuse of discretion.[10]  For the reasons that follow, Dawkins' argument must fail.[11]

## A.

First, Dawkins seeks another remand to explore his alleged consent to the search in light of the likely bias against him generated by his assault on Officer Solgat in 2007.  In the hearing on remand in this case, Officer Solgat acknowledged that he had arrested Dawkins for assault in 2007, but he reaffirmed his testimony from the earlier 2009 suppression hearing that he had not recognized

---

[9]  *In re R.E.G.*, 602 A.2d 146, 148 (D.C. 1992).  In addition to *R.E.G.*, Dawkins refers the court to *In re Ko. W.*, 774 A.2d 296, 306 n.13 (D.C. 2001); *Daniels v. United States*, 613 A.2d 342, 349 (D.C. 1992) (Schwelb, J., concurring); *Jackson v. United States*, 589 A.2d 1270, 1271 (D.C. 1991); *United States v. Reed*, 114 F.3d 1067 (10th Cir. 1997).

[10]  *See Garibay v. United States*, 72 A.3d 133, 138 n.11 (D.C. 2013).

[11]  The government urges us to conclude that Dawkins' waived his arguments on this appeal because they were (i) not raised in the first appeal, *see Rose v. United States*, 629 A.2d 526, 535 (D.C. 1993); (ii) outside of the scope of the limited remand, *see Jung v. Jung*, 844 A.2d 1099, 1106 n.7 (D.C. 2004); and (iii) amounted to "invited error," *see Preacher v. United States*, 934 A.2d 363, 368 (D.C. 2007).  We prefer, however, to resolve the issues raised here on the merits. *See Garces v. Bradley*, 299 A.2d 142, 144 (D.C. 1973) (noting "the well settled rule that the law abhors a default, and the corollary of the rule that dispositions on the merits are favored").

Dawkins at the time he arrested him in this case.[12]  Counsel then asked:  "In that prior encounter when you arrested Mr. Dawkins in 2007, you asked him to remove his hands from his pockets, right?"  The trial court sustained the government's objection to the question, explaining:  "That was not within the scope of a bias cross-examination and that's what this case has been remanded for."  Then, after asking Officer Solgat a few questions bearing on the voluntariness of Dawkins' consent to the search, defense counsel confirmed that she had explored bias with Officer Solgat in "every way in which his prior encounter in '07 with [Dawkins] could have informed his reasons for testifying in the way he did."  The trial court agreed that the 2007 incident had a "bearing on bias," but the court ultimately found that the incident was insufficient to undermine Officer Solgat's credibility, which the court found superior to that of Dawkins.[13]

Although Dawkins asks for review of the trial court's bias ruling, he has never made clear—having ended further questioning about bias—how the evidence proffered from 2007 can help him.  To the contrary, by proffering Dawkins'

---

[12]  See *supra* note 7.

[13]  In addition to the 2007 incident, which resulted in Dawkins' APO conviction, the trial court found that several convictions of Dawkins for contempt counted "pretty significantly on truth and veracity and did play a strong role in my view that the officer had greater credibility than the defendant."

innocence in precipitating the 2007 incident (for which he was convicted of APO), and then proffering Officer Solgat's excessive force while arresting Dawkins during that encounter, trial counsel proffered new facts which, on their face—as reasonably assessed by the court—highlighted Dawkins' likely bias against Officer Solgat, not the other way around. The proffer added nothing that would have reflected greater bias from Officer Solgat against Dawkins beyond what was already in the trial court record, given defense counsel's concession that no further questions of Officer Solgat about bias were necessary. In the court's view, therefore, the proffered facts did not reflect evidence that, even if true, would enhance counsel's argument (previously rejected by the trial court) that Dawkins' consent to the search was doubtful because of the arresting officer's bias against him.

Accordingly, having rejected any need for further questioning about bias, appellant Dawkins is left on appeal with an argument that the trial court erroneously relied on facts alleged in counsel's proffer, without further elucidation, to discount Officer Solgat's bias against Dawkins. The trial court, however, as the government points out, was aware from the 2009 hearing of the basic facts of the

2007 incident,[14] as supplemented by the proffer accepted as true.[15] And as the court found—we believe reasonably so—the proffer cut against Dawkins' claim that Officer Solgat was biased, without providing any new countervailing rationale (absent need for further testimony from Officer Solgat) that could change that finding to favor Dawkins. All things considered, therefore, we cannot conclude that the trial court abused its discretion in weighing the bias factor for the government's benefit. The court's ruling on that issue must be sustained.

**B.**

After conceding that she had no further questions about bias, defense counsel told the court that she had more to ask Officer Solgat about the "voluntariness of the consent." The trial court rejected that line of questioning and

---

[14] The trial judge noted at the outset of her findings that she had reviewed the "very detailed notes" she took during the first suppression hearing, and also remembered that hearing "independently."

[15] Dawkins urges us to view the trial court's introductory statement—"now that the record has been flushed out about the prior arrest"—to indicate that the court must have been drawing upon the proffer as new evidence, as yet unsupported by testimony, in ruling on bias. As noted in the text, we agree that the trial court, in ruling on bias, accepted as true the facts proffered by Dawkins and concluded that those assertions cut against his argument. Because Dawkins failed to proffer an additional rationale, derived from the 2007 incident, that would have elucidated that incident more favorably to him, we cannot gainsay the trial court's bias ruling.

dismissed Officer Solgat, reasoning that voluntariness had not been "raised at the prior hearing" or "on appeal." Nonetheless, the judge agreed, as noted earlier, to hear counsel's proffer about what more she would have heard "about 2007."[16]

In setting forth the facts and proceedings in Part I., we explained the trial court's conclusion that any nexus between the 2007 incident and the voluntariness of Dawkins' consent to the search two years later was too attenuated for a finding in Dawkins' favor. The court took as true everything that counsel proffered about 2007. The court thus assumed that further questioning would have confirmed that, despite Dawkins' alleged failure to have done "anything wrong," Officer Solgat physically accosted Dawkins by "attempting to remove [Dawkins'] hands from his pockets," and that Dawkins in return, while resisting arrest, assaulted Officer Solgat. In accepting the truth of counsel's proffer, however, the trial court could perceive no way of finding that Dawkins was less likely to have consented in this

---

[16] Before the proffer, counsel elicited from Officer Solgat that Dawkins had consented to the search "mumbl[ing]" something like "go ahead." The officer acknowledged, however, that Dawkins—in contrast with his cooperation during the search—had refused to cooperate later during the booking process, declining even to give his phone number, employment history, or other contact information. This allegedly inconsistent behavior underlay Dawkins' argument against consent to the search: namely, that the latter refusals evidenced that Dawkins—but for Officer Solgat's assaultive, intimidating behavior during the arrest—would also have very likely refused to consent to the search.

case than he would have been if the 2007 incident had not occurred. More specifically, absent further testimony by Dawkins himself (which the proffer did not anticipate), the trial court could detect no way of ascertaining whether the physical abuse Dawkins ascribed to Officer Solgat would have made Dawkins (i) less likely to consent to the search two years later, because of unabated anger, or (ii) more likely to consent in the hope of earning favor with the officer to avoid another arrest.[17] In short, the proffer did not explain how that inherent ambiguity would be resolved.

Nor could the trial court discern a basis for finding that Officer Solgat would have been more likely, because of Dawkins' APO, to "fabricate" Dawkins' consent to the search. The trial court had found (and we have sustained the finding) that the 2007 incident did not generate bias against Dawkins—surely an ingredient essential for a grievance sufficient to motivate the officer to lie in court. Furthermore, the proffer did not suggest any reason why Officer Solgat, if not biased against Dawkins, would have modified, let alone recanted, his earlier

---

[17] Said the court: "I don't take from [the proffered evidence of the 2007 arrest altercation] that he would not consent when encountering an officer he had dealt with before, who had gotten him locked up before, when he saw him on the street. He would just as likely attempt to cooperate to try not to get arrested this time."

testimony confirming Dawkins' consent. Finally, the trial court found that Officer Solgat, at both hearings (the 2009 suppression hearing and the 2012 remand suppression hearing), had "greater credibility than the defendant," especially in light of Dawkins' APO conviction and several convictions of contempt.[18]

It is true, as Dawkins stresses, that "a mere proffer is not evidence."[19] But the facts here are distinguishable from those in the judicial decisions, referencing that language, on which Dawkins relies. This is not a case in which the trial court—substantially on the basis of proffered evidence—made a finding adverse to the defendant on a critical disputed fact.[20] Rather, this is a case in which the trial court (i) in light of the evidence of record thus far (in the 2009 and 2012 hearings), found the defense argument for suppression insufficient; (ii) gave the defense another opportunity, by making an evidentiary proffer, to convince the court that the additional evidence spelled out in the proffer—when added to the

---

[18] See *supra* note 13.

[19] *In re R.E.G.*, 602 A.2d 146, 148 (D.C. 1992).

[20] *See, e.g.*, *In re Ko. W.*, 774 A.2d 296 (D.C. 2001) (reversing trial court's finding of abuse, and subsequent denial of visitation, based on unsubstantiated proffer of abuse); *Jackson v. United States*, 589 A.2d 1270 (D.C. 2991) (reversing trial court's ruling that statements were obtained legally, and therefore were admissible in evidence, based on government's proffer that statement at issue was not in response to interrogation).

combined hearing record—could lead a reasonable factfinder to find for the defense; but (iii) ultimately ruled against the admission of additional testimony—and denied the motion to suppress—because even the proffered evidence, taken under oath, would be insufficient to change the outcome.

We relied on that approach in *R.E.G.*,[21] where the trial court had to evaluate whether the arresting officer had probable cause to arrest. The court entertained a defense proffer as to how a missing witness would have testified if present. After hearing the defense proffer, the trial court concluded that even if it evaluated the proffered evidence "in the light most favorable" to the defense, the court was "still prepared to rule that there was probable cause to make this stop."[22] We upheld the trial court's acceptance of "appellant's hypothesis," as set out in the proffer, before reaching a legal conclusion.[23] We then said that "[e]ven if we were to accept appellant's proffer as evidence, we would still conclude that there was probable cause for his arrest."[24]

---

[21] *See R.E.G.,* 602 A.2d at 146.

[22] *Id.* at 148.

[23] *Id.* at 149.

[24] *Id.*

Similarly, the trial court here concluded that even if it "assume[d] for purposes of this discussion that, as proffered, the defendant resisted when he was arrested" in 2007—an arrest allegedly accomplished with excessive force—the court would still conclude that there were insufficient grounds for ruling that Dawkins had not consented to the search in 2009.  No elaboration of the proffered evidence would convince the court to nullify its earlier finding of consent, because the court perceived an insufficient nexus between Dawkins' treatment (however rough) by Officer Solgat during the earlier arrest, and a decision by Dawkins, two years later, whether to consent to a search by that same police officer.  Any inference, either way, would be speculative, concluded the court.[25]

Here is the critical point:  Dawkins offered no explanation to the trial court as to how additional cross-examination of Officer Solgat, limited to the details specified in counsel's proffer, would manifest a relationship between the 2007 APO arrest and the 2009 arrest in this case sufficient to disabuse the court of its expressed belief that the officer had testified credibly about Dawkins' consent.  For the proffer to have triggered further testimony, it would have had to contain not only the stated facts but also convincing reasons why those facts, if heard live from

---

[25]  See *supra* note 17.

the officer in court, might well tip the scale in Dawkins' favor.[26]  Such reasons, beyond speculative inferences from the bare facts proffered, are missing here.

### III.

Accordingly, in denying Dawkins' motion to suppress, the trial court did not err, and thus did not abuse its discretion, when declining to permit the additional cross-examination of Officer Solgat specified by Dawkins' proffer.  The judgment in this appeal is therefore affirmed.

*So ordered.*

---

[26] *See R.E.G.*, 602 A.2d at 148-49; *see also Jones v. United States*, 516 A.2d 513, 517 (D.C. 1986) ("[An] attorney must proffer facts sufficient to permit the trial judge to evaluate whether the proposed question is probative of bias"); *Scull v. United States*, 564 A.2d 1161, 1164 n.4 (D.C. 1989) ("[T]he questioner must support any proposal for cross-examination with a credible statement describing the suspected cause of bias in the witness, supported by plausible factual allegations or itself plausible within the framework of facts that neither party has contested.").